**UNITED STATES of America,
Appellee,**

v.

**Arthur Peter DZIALAK, Appellant.**

**No. 345, Docket 34842.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 12, 1970.

Decided March 17, 1971.

L. F. Walentynowicz, Buffalo, N. Y., for appellant.

James W. Grable, Asst. U. S. Atty. (H. Kenneth Schroeder, Jr., U. S. Atty., W. D. N. Y.), for appellee.

Before SMITH and HAYS, Circuit Judges, and LEVET, District Judge.*

LEVET, District Judge:

This is an appeal from a judgment of conviction entered on February 9, 1970 in the United States District Court for the Western District of New York (Henderson, D. J.) convicting the appellant, Arthur Peter Dzialak, after trial by jury on Counts II, III, IV and V of a five-count indictment. Counts II, IV and V charged appellant with possessing chattels valued in excess of $100.00 knowing the same to be stolen, which goods were part of an interstate shipment, in violation of 18 U.S.C. § 659. Count III charged appellant with possessing chattels valued at less than $100.00, knowing the same to be stolen, in violation of 18 U.S.C. § 659. Dzialak was sentenced to a prison terms of one year on the misdemeanor charge and three years on each of the felony charges, the terms to run concurrently. In addition, the court levied a fine of

---

* United States District Court for the South ern District of New York, sitting by designation.

$5,000 on each felony count and of $1,-000 on the misdemeanor.

Dzialak urges that his conviction on all four counts be reversed on the following grounds:

1. Certain evidence seized in the search of the trash in front of the premises of appellant was obtained by means of an unlawful search and seizure;

2. Probable cause was lacking for the issuance of the search warrant dated December 4, 1967 authorizing a search of the home of appellant;

3. The evidence seized in the search of appellant's premises on December 4, 1967 was obtained by means of an unlawful search and seizure;

4. The superseding indictment, upon which appellant's conviction rests, was returned by inadequate and incompetent evidence before the Grand Jury;

5. The reference to certain slips of paper first admitted and later withdrawn from evidence at trial constituted prejudicial error;

6. The trial judge improperly charged the jury with respect to Count II of the indictment;

7. The evidence was insufficient to sustain the conviction of appellant of the offense charged in Count II of the indictment;

8. The sentence imposed by the trial judge was illegal, excessive and arbitrary.

We affirm the judgment as to Counts II, III and V and reverse as to Count IV.

Dzialak was employed by the Railway Express Agency as a driver. Harold J. Poling was a security investigator for the Railway Express Agency. Poling began an investigation of appellant's activities on November 5, 1967 after learning that certain merchandise placed in the custody of Railway Express for delivery was not reaching its destination. Poling also received information from a fellow Railway Express employee that an unidentified person had reported that the wife of appellant was selling watches and clothing at low prices.

During the course of a surveillance of appellant's home at 35 Diane Drive in the town of Cheektowaga, New York, on November 24, 1967, Poling examined a cardboard box which was part of the trash left between the sidewalk and street in front of appellant's home. The carton bore an attached white copy of an invoice dated November 7, 1967 covering a shipment of several dozen hosiery shipped from a mill in Pennsylvania to a Seárs, Roebuck store in Lockport, New York. Inside the box was found a pink copy of the same invoice as well as several torn pieces of a cardboard box which, when pieced together, formed a carton bearing the name "Schwinn Bicycles," and an address label bearing the notation "Jimmy Mangum, 2594 Fontaine, Memphis, Tennessee, from John R. Dixon, 187 Brunswick, Buffalo, New York 14208." The carton also contained three pieces of paper bearing references to shirts and shirt sizes.

Poling conducted a second surveillance of the premises of the appellant on November 30, 1967, at which time he again seized items from the trash in front of appellant's home. Among the items seized from the appellant's trash at this time was a white cardboard carton addressed to appellant's wife. Poling also seized a Schwinn bicycle guarantee stamped "Heil Brothers, 640 Broadway, Buffalo, New York." Poling conducted further investigation regarding these items, discovering that a number of them referred to items missing from various Railway Express shipments.

Poling turned this information over to F.B.I. agent Thomas Gray on November 24, 1967. Gray applied for a search warrant before a United States Commissioner on December 4, 1967 to search the home of appellant at 35 Diane Drive in Cheektowaga, New York. In support of his application, Gray supplied a two-page list of certain property which he believed to be concealed on the premises of appellant at the time. This list included 27½ dozen pairs of hosiery from Penn-

Warrington Hosiery Mills, Inc. and identified by style, number, color and size; one Schwinn boy's bicycle and accompanying description as well as a description of one carton of binoculars.

Agent Gray presented a nine-page affidavit setting forth a detailed description of the investigation of Poling as well as Gray's own corroborative investigation. A warrant was issued for a search of both the home and automobile of appellant.

During a search of appellant's home, which lasted some four hours, the FBI, on December 4, 1967, seized one Schwinn boy's bicycle, five boxes of hosiery, 12 pieces of telescopic equipment, 21 Timex watches and five shipping papers pertaining to those watches and a great quantity of other items besides those described in the warrant.

Dzialak was indicted on December 8, 1967 and charged with three counts of violating 18 U.S.C. § 659. These counts involved the unlawful possession of (1) four dozen sport shirts as a felony; (2) a carton of assorted hosiery as a felony; and (3) a bicycle as a misdemeanor.

On March 25, 1969 a superseding indictment was filed charging Dzialak with these original three counts plus two additional felony violations of 18 U.S.C. § 659. The two additional counts were for the possession of 21 Timex watches as a felony and the possession of three opera glasses, two microscopes and seven telescopes as a felony.

Appellant's first claim is that the search by Harold Poling of the trash located in front of appellant's house was in violation of his right under the Fourth Amendment to be free from unreasonable searches and seizures. The District Court decided this question on a motion to suppress the items seized by Poling and held that the items taken had been abandoned by Dzialak and therefore that there was nothing unlawful about their seizure.

Appellant argues that this was incorrect and places reliance upon an ordinance of the Town of Cheektowaga, which was in effect at the time of the seizures, and which prohibits anyone, except authorized employees of the Town of Cheektowaga, to rummage into, pick up, collect, move or otherwise interfere with articles or materials placed on the right of way of any public street for collection. It is argued that Dzialak may very well have relied on this ordinance when placing his trash out in the street and that this goes to negative any intent to abandon the articles in question.

■ We are not persuaded. We think it abundantly clear that Dzialak abandoned the property. The town ordinance simply cannot change the fact that he "threw [these articles] away" and thus there "can be nothing unlawful in the Government's appropriation of such abandoned property." Abel v. United States, 362 U.S. 217, 241, 80 S. Ct. 683, 698, 4 L.Ed.2d 668 (1960).

Appellant alleges further that the search warrants obtained December 4, 1967 were improperly issued. The first contention is that their issuance was based primarily on the fruits of what has been contended to be an illegal search and seizure by Poling. Since we have already held that the searches by Poling were legal, we need not concern ourselves with this part of the argument. It is contended further, however, that the warrants, which were issued on the basis of Gray's affidavit rather than Poling's, were issued without probable cause.

■ The standards for assessing the sufficiency of a warrant application were set forth in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L. Ed.2d 637 (1969). They are twofold: The warrant application must state "some of the underlying circumstances" from which the informant drew his conclusions concerning the suspect's criminal activities and it must also disclose some of the reasons which gave assurance of the informant's reliability. Both standards are met here.

The affidavit of Agent Gray set forth a very lengthy set of facts to substantiate Poling's conclusions about Dzialak's criminal activity. There was the material obtained in the search, the results of Poling's subsequent investigations, and the corroborative results of Gray's own independent investigation.

However, appellant's argument goes basically to the second of the *Spinelli* criteria, that is, whether there were sufficient facts to justify the Commissioner in deciding Poling was trustworthy as an informant. We conclude that here, too, the affidavit was sufficient to justify a finding of probable cause.

■ First of all, while the affidavit identified Poling only by his occupation, the fact that Poling was a railroad policeman and not just an ordinary private citizen gave him some degree of reliability as an informant. But of primary importance is the detail of information and descriptions provided by Poling together with the extent of corroboration by independent observation on the part of Gray. Besides Poling's own investigation, observations, and all the materials seized from appellant's trash, Gray himself personally contacted the local consignee of an Arrow shirt shipment and verified non-receipt of part of that shipment which became the subject of Count I of the indictment. He also verified non-delivery of the bicycle to the Tennessee consignee, which bicycle became Count III of the indictment. He also verified that a piece of paper taken from appellant's garbage on November 24, 1967 with the notation "Don—4 shirts" contained two latent fingerprints identical to those of the appellant.

The elaborate detail of the information provided by Poling and the consistency of Gray's own findings support and confirm the Commissioner's conclusion that the informant was generally trustworthy. See United States v. Bozza, 365 F.2d 206 (2nd Cir. 1966).

Appellant's next point is more substantial. It challenges the extent of the search conducted by the police of the premises of appellant and the seizure of items not described in the search warrant. Appellant's conviction on Count IV was for the unlawful possession of 21 Timex watches as a felony. It is conceded by the government that the 21 watches were not at all described in the search warrant. Count V was for the unlawful possession of three opera glasses, two microscopes, and seven telescopes as a felony. No such items are described in the search warrant, although the warrant did authorize a search for a carton of binoculars.

■ The law in this area is quite clear. Both the Fourth Amendment and Rule 41(c), F.R.Crim.P., specifically state that any search warrant identify what is to be searched for and seized. Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927), makes it clear that nothing is to be left to the discretion of the officer executing the warrant—that if something is not described in the warrant, it cannot be seized.

The government urges that Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) confers this discretion upon police officers. This circuit specifically rejected such an argument in United States ex rel. Nickens v. La-Vallee, 391 F.2d 123 (1968), holding that Warden v. Hayden was limited to its facts—that is, the scope of searches incident to arrest (rather than subject to a warrant). Furthermore, the Supreme Court has on several occasions reiterated the strong stance it took in *Marron* against general searches. See, for example, Stanford v. Texas, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965) and Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), the latter of which postdated *Hayden*. In *Stanford* the court said, in referring to the Fourth Amendment requirement that a warrant "particularly describe[e] the place to be searched, and the person or things to be seized":

"These words are precise and clear. They reflect the determination of those who wrote the Bill of Rights

that the people of this new Nation should forever 'be secure in their persons, houses, papers, and effects' from the unbridled authority of a general warrant." (Stanford v. Texas, *supra*, 379 U.S. at 481, 85 S.Ct. at 509)

The government cautions that to follow such a rule, however, is to provide a more confining rule for searches incident to a warrant than for those incident to an arrest and, therefore, to discourage the use of warrants. Such an argument first of all ignores the fact that searches incident to an arrest are also subject to considerable safeguards and that these safeguards have been made all the more exact since the Supreme Court's most recent ruling in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

█ Of far greater importance, however, is the fact that the burden placed upon the police by such a rule is minor indeed. As we said when dealing with a similar situation in *LaVallee*, the police had ample time and opportunity to seek another warrant for the additional items seized. They simply did not do so. While at one level it may be somewhat formalistic to demand they do secure such an additional warrant, the dangers inherent in a contrary rule are much too great. We are given at least a glimpse of such possible dangers by the facts of this very case. In executing what was a very precise warrant, the police spent more than four hours ransacking appellant's house for any possible incriminating evidence. Of the items seized, those which were not described in the warrant far outnumbered those described. The rule we reaffirm today not only avoids such an abhorrent general search but encourages greater care in obtaining the magistrate's approval for a specific search.

As to the specific counts in question, we reverse as to Count IV which was based on the illegal seizure of the 21 Timex watches. As to Count V we affirm in that all the optical equipment may be considered to come under the "binoculars" described in the warrant.

█ However, we reject appellant's further contention that he was prejudiced in his defense on the other three counts by the introduction of his illegally seized evidence as to Count IV. There was more than adequate evidence, all of it quite properly obtained, and all of it quite independent of the illegally seized watches, to convict appellant of the charges in Counts II, III and V, and there is nothing to indicate that the evidence pertaining to the watches affected in any way the jury's verdict as to those other counts.

Appellant further charges that the superseding indictment was based upon incompetent evidence. However, he concedes that those specific parts of the grand jury proceedings to which he takes exception are, in fact, "[not] sufficiently objectionable." Instead, a general plea is made, questioning the impartiality of the grand jury and labeling it as a "rubber stamp" for the prosecution. However, this claim is devoid of any substantiation.

█ We remind counsel of the general presumption of regularity afforded grand jury proceedings, United States v. Nunan, 236 F.2d 576 (2nd Cir. 1956), cert. denied 353 U.S. 912, 77 S.Ct. 661, 1 L.Ed.2d 665 (1957), and point in this case to the fact that both of the primary government witnesses, Harold Poling and Thomas Gray, testified at some considerable length before the grand jury. This court simply has no evidence in the record before it that would in any way go toward meeting the strong burden appellant bears in challenging the proceedings of the grand jury.

█ Appellant urges as still another error the reference at trial to certain slips of paper and their later withdrawal from evidence. This requires little discussion. The slips of paper referred to bore references to shirts and shirt sizes. The trial court ultimately permitted the jury to consider those two exhibits only for the testimony about the fingerprints which were on them. A photograph of another slip of paper was also allowed to

218

be considered by the jury solely for the fingerprint evidence.

It is clear that appellant could have suffered no prejudice from the introduction of these pieces of paper. Any possible inference from the papers that appellant was taking orders for stolen merchandise was obviously rejected in the final verdict. The jury acquitted appellant of the charge of unlawful possession of stolen shirts.

■ Appellant also urges that there was insufficient evidence to go to the jury on Count II and that the trial judge improperly instructed the jury as to this count. This claim is based on the fact that the charge was for unlawful possession of hosiery of a value in excess of $100.00 but that only about $11.50 worth of hosiery was found in appellant's house during the search. It is claimed that the count should have been submitted to the jury as a misdemeanor.

The court was quite careful, however, in instructing the jury that possession of 2½ dozen pairs of hosiery was not necessarily sufficient proof that appellant possessed the 27½ dozen pairs of hosiery charged in the indictment. The jury was further cautioned as to the permissible inferences to be drawn from all the circumstantial evidence. That there was sufficient circumstantial evidence here to go to the jury is clear. Besides the hosiery found in appellant's house there was the carton from which those specific pairs of hosiery came and which originally contained the full amount of hosiery charged as well as a packing invoice for exactly that amount of hosiery, both of which items were found in the trash in front of appellant's house. Thus, we find no error in the court's failure to direct a verdict for appellant.

Finally appellant claims that the sentence imposed upon him was arbitrary, excessive and illegal. Certainly there can be no such claim regarding the prison sentences, which were well within the statutorily prescribed limits. The maxi-mum penalty under Counts II, IV and V was ten years' imprisonment and a $5,-000 fine. The court imposed only a three year term of imprisonment under those counts and chose to impose concurrent rather than consecutive sentences.

However, the reason why the trial judge chose to impose the maximum fine on each count in addition to this long prison term is difficult to comprehend, particularly when one considers that the appellant is totally without any assets. It seems to stand as a definite impediment to rehabilitation on the part of appellant. As Judge Hincks said so ably in United States v. Doe, 101 F.Supp. 609 (D.Conn.1951):

"In my view, a fine known to be beyond the defendant's capacity to pay, is not in accordance with sound sentencing policy. Like any judicial order which is not enforced it breeds disrespect for the judicial process. It tends to encourage lack of executive diligence in the collection of fines which with due diligence are collectible. If accompanied by a sentence of confinement it constitutes an arbitrary obstruction of parole and creates undesirable custodial problems. By obstructing economic rehabilitation, in the long run it operates to foment rather than to deter crime. And just as sound departmental policy requires that upon imposition of a fine a prompt and thorough collective effort should be made, so sound sentencing policy requires that if the fine imposed is then found to exceed the defendant's capacity to pay, report of that fact should be made to the court through the U.S. Attorney before the expiration of the sixty days within which under Rule 35 the court has power to abate the sentence." (p. 613)

■ While this court has no jurisdiction to review the severity of sentences imposed by the district court (see, for example, Jones v. United States, 117 U. S.App.D.C. 169, 327 F.2d 867, 869 (1963)), and while we do not suggest that the sentences imposed by the trial

judge were contrary to the applicable law, we would nonetheless commend to the district court's sound discretion any timely motion made by appellant under Rule 35, F.R.Crim.P., for a reconsideration of the fine.

Affirmed in part, reversed in part.

HAYS, Circuit Judge (dissenting in part):

I dissent from that part of the majority decision which holds that the evidence used to convict appellant on count IV for possession of 21 Timex watches was obtained by an illegal search and seizure in violation of the Fourth Amendment.

The watches were the fruits of the crime upon which the warrant was based. When a valid warrant in good faith describes certain items to be seized and in the course of searching for those items, other articles are observed which are obviously fruits of the same crime as that upon which the warrant is based, there is no requirement that a new search warrant be obtained in order to seize those other articles. If a warrant particularly described 2½ dozen pairs of stockings and 3 dozen were found, should the extra ½ dozen have to be left behind?

The police activity in the instant case was not, as the majority says, "an abhorrent general search." There is no indication that the police conducted any "general search" at all. The articles not named in the warrant were found only in the course of looking for articles which were so named. We have been careful to distinguish between a general search and a search for specific articles. See United States v. Pino, 431 F. 2d 1043 (2d Cir. 1970); United States v. Lozaw, 427 F.2d 911 (2d Cir. 1970).

The cases of United States ex rel. Nickens v. LaVallee, 391 F.2d 123 (2d Cir. 1968) and Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927), which the majority finds to be controlling here, are distinguishable. In neither of those cases was the seizure confined to the fruits of the very crime on which the warrant issued; on the contrary, objects such as ledgers, receipts and newspaper clippings which might serve as incidental evidence were seized.