558 P.2d 402 (1976)
J.D. and D.R.D., Appellants,
v.
The STATE of Oklahoma, Appellee.
Nos. J-76-455, J-76-456.
Court of Criminal Appeals of Oklahoma.
December 16, 1976.
John Dratz, Jr., Asst. Public Defender, Juvenile Division, Tulsa District Court, for appellants.
Carey W. Clark, Asst. Dist. Atty., Juvenile Division, Tulsa District Court, for appellee.

*403 OPINION
BRETT, Presiding Judge:
J.D. and D.R.D., both juveniles, appeal from the orders of the Tulsa County Juvenile Court, which after finding both appellants to be delinquent, remitted D.R.D. to the custody of the Department of Institutions, Social and Rehabilitative Services, and placed J.D. under court probation. These orders were based on a finding by Referee Helen Kannady that the appellants had committed the delinquent act of Second Degree Burglary.
The evidence at the adjudicatory hearing was that on March 3, 1976, the James Hart, Jr., residence was burglarized, entrance being gained by forcing a rear window of the house. The missing items included a Bulova watch, a pocket knife, a locket and some coins. On the same day, Officer Joseph Vandever stopped a car making an illegal right-hand turn, in which the appellants and one John Boyd were passengers and which was being driven by one Buckmaster. Buckmaster got out of the car, handed Vandever his driver's license and was fairly cooperative. Although Vandever saw no furtive movements in the car, he ordered Boyd and the appellants out of the vehicle and patted them down. His frisk produced a locket, a Bulova watch and some coins on the person of D.R.D. Also, Vandever found a pocket knife. Other than talk of the illegal turn, no questions or discussion preceded this frisk of the four boys. Vandever testified he felt that the boys were truant from school, yet he did not know their ages or identities, nor did he make inquiry as to these factors. Although Officer Vandever conceded that legitimate reasons did exist for not being in school, he did not attempt to discover any such excuses. After discovery of the watch, locket and coins, and armed with a report that similar items had been stolen earlier that day, Vandever took D.R.D. into custody for burglary. He also took Buckmaster into custody for the illegal turn, and J.D. and Boyd as children in need of supervision. The boys were taken to the police station and thereafter released to the custody of their parents.
On March 15, 1976, appellant J.D. was contacted at his mother's home by investigator *404 Dan McSlarrow. J.D.'s mother was present and McSlarrow explained J.D.'s Miranda rights to both parties. The appellant and his mother testified that they understood those rights. McSlarrow inquired about the burglary, but J.D. refused to make a statement. On March 17, 1976, at the Juvenile Division, McSlarrow again explained to the appellant and his mother their rights, and both parties stated that they understood those rights. J.D. then signed a statement confessing to the burglary.
On March 16, 1976, McSlarrow visited D.R.D.'s home. McSlarrow explained to appellant and appellant's father their rights, and both D.R.D. and his father said they fully understood those rights. McSlarrow then obtained a written confession from appellant as to the burglary of the Hart residence.
It is appellants' single assignment of error that the search of the defendants' persons was illegal, and that all the evidence subsequently obtained, including the confessions, was tainted with this illegality and therefore inadmissible. The appellants contend that this was a stop and frisk situation, while the State holds it to have been a search incident to an arrest. Under the evidence, we cannot condone this search using either theory.
A "Terry" type stop and frisk which is permissible for the limited purpose of protecting the officer involved necessarily depends upon the circumstances prior to the search for its justification. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In this instance the circumstances which preceded the stop and frisk were not so suspicious as to justify the officer's actions. No furtive movements were made by the car's occupants, and the driver was cooperative with Officer Vandever. From his vantage point, the officer could not identify the appellants nor tell their ages. Vandever said that Buckmaster had a reputation for being involved in burglaries in the area, but such information alone cannot justify a search. Certainly, we do not dispute the necessity of these limited frisks, but before they are allowed the officer will have to justify his presence. Terry v. Ohio, supra.
The next question is, were these searches valid as being incident to an arrest? This inquiry necessarily hinges on whether Vandever was justified in taking the appellants into custody in the first place. Indeed, if an officer is acting to protect a child, as opposed to protecting society against an action the child is perpetrating, he is not bound by the same standards of probable cause or reasonable belief. That this lesser standard exists for the benefit of the juvenile necessarily means that it is not to be a subterfuge by which a child may be stopped and searched "for his own good." Vandever stated that he felt the children were in need of supervision, as described in 10 O.S. 1971, § 1101, yet there is no evidence to support this belief. He could not identify the appellants, nor was he able to tell their ages. He admitted that there are justifications for missing school, yet he made no inquiries regarding this matter. The fact that he stopped a car during school hours with some seemingly young occupants in it cannot excuse his subsequent actions. While we cannot set down specific guidelines as to when an officer may or may not take a child into custody for the child's good, we do hold that the present case cannot be upheld on such a basis. As Vandever was not justified in taking the children into custody, the subsequent search was illegal and the fruits therefrom were inadmissible. Catron v. City of Ponca City, Okl.Cr., 340 P.2d 504 (1959); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
Although we have found the fruits of Vandever's unwarranted searches to be inadmissible, such is not the status of the confessions. Admission of a confession made subsequent to an illegal arrest is only admissible where it is proven that the statement was voluntarily given and purged of the taint of illegality. Brown v. *405 Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); Wong Sun v. United States, supra. Both statements in this instance occurred at least 13 days after the appellants were first confronted by the police. Both appellants were accompanied by at least one of their parents when the statements were given. In both instances the parent and child repeatedly stated that they understood their rights. While juvenile confessions are more suspect than those of adults, the voluntary statements in this case were well within the boundaries prescribed by 10 O.S. 1971, § 1109, and elucidated in J.T.P. v. State, Okl.Cr., 544 P.2d 1270 (1975). Since the confessions were admissible, and sufficiently corroborated by the testimonies of Hart, Jr., and his wife, we must reject appellants' contentions.
For the above and foregoing reasons, we AFFIRM the rulings of the Juvenile Court.
BUSSEY and BLISS, JJ., concur.