**Raymond John BABEK, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F-77-874.**

Court of Criminal Appeals of Oklahoma.

Dec. 21, 1978.

T. Hurley Jordan, Public Defender, Rodney A. Sherrer, Asst. Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., Duane N. Rasmussen, Asst. Atty. Gen., for appellee.

## OPINION

CORNISH, Judge:

Raymond John Babek appeals his conviction of the offense of Forgery in the Second Degree, After Former Conviction of a Felony, and his sentence by an Oklahoma County jury of twelve (12) years' imprisonment in Case No. CRF–77–1185. We are of the opinion the sentence should be modified.

The pivotal issue on appeal concerns the voluntariness of a confession following a warrantless arrest. Defendant asserts the trial court erred in admitting into evidence the confession given within 24 hours after being taken into custody. He further argues the confession followed an unconstitutional arrest and was thus inadmissible as "fruit of the poisonous tree," *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), since the arresting officers had no probable cause to make an arrest.

At trial, an in camera hearing was conducted to determine the admissibility of defendant's confession. The facts presented show that on the morning of March 28,

1977, Wanda Nicholson heard noises outside her Oklahoma City apartment and, upon looking out the bedroom window, saw a tow truck and three men, one of whom was the defendant, standing around her husband's 1969 Chevelle Super Sport automobile. When it appeared the men were going to remove the car from the parking lot, she was told by the defendant that the car was his and that he had sold it to one of the other men.

Mrs. Nicholson did not believe the defendant and threatened to call the police. She then observed the tow truck driver return the car title to the defendant, receive cash in return, and say to contact him when he got things straightened out. The two men then departed, leaving the defendant alone in the parking lot. Defendant then asked Mrs. Nicholson to wait before calling the police, as he wanted to talk to her. The defendant proceeded to her upstairs apartment, where he left the title in the front room. Mrs. Nicholson asked defendant where he lived. He said he resided in Apartment No. 21C and then left.

The car title was signed on the back with the forged signature of Mrs. Nicholson's husband, Gregory Nicholson, who later testified at trial the handwriting was not his, nor had he authorized anyone to sell his automobile.

When the police were notified by Mrs. Nicholson of the events which had transpired, the officers proceeded to defendant's apartment. After reading the *Miranda* warnings, the defendant was arrested for attempted larceny of an automobile.

Larry Gramling, Detective with the Oklahoma City Police Department, who investigated the alleged forgery of the car title belonging to Gregory Nicholson, stated he talked with the defendant in the City jail on March 29, 1977, after advising him of his rights, which defendant acknowledged he understood. When questioned regarding the title, defendant told Officer Gramling he had signed the title on the back, which he obtained from an unidentified white male he described as being in his late 20's, approximately 5'10", and with dark hair.

Officer Burrow also talked with the defendant while he was incarcerated and asked the defendant for a handwriting sample. Apparently referring to the car title, defendant replied, "That won't be necessary, I signed it."

█ In this appeal we must first determine the propriety of the warrantless arrest in the case at bar. This Court has recognized in *State v. McLemore*, Okl.Cr., 561 P.2d 1367 (1977), quoting from *Greene v. State*, Okl.Cr., 508 P.2d 1095 (1973), the following test to determine the existence of probable cause for a warrantless arrest:

> " 'The test is "whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information was sufficient to warrant a prudent man in believing that the petitioner [arrestee] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). . . .' " (Citations omitted, footnote omitted)

In determining whether there was probable cause in the instant case to arrest the defendant without a warrant, we think the State's case is buttressed by the language of this Court in *Jones v. State*, Okl.Cr., 555 P.2d 63 (1976), where we said when a police officer arrests an individual without a warrant he is not bound to show in his justification a felony actually committed to render such arrest lawful, but if the officer suspects on his own knowledge of the facts, or upon facts communicated to him by third parties, and has reasonable ground to believe the individual has been guilty of a felony, the arrest is not unlawful. See also *Booze v. State*, Okl.Cr., 390 P.2d 261 (1964); *Darks v. State*, Okl.Cr., 273 P.2d 880 (1954).

█ The facts in this case reveal the arresting officers, after receiving the call from Mrs. Nicholson, and being aware of the apparent plan to remove Mr. Nicholson's automobile from the parking lot of the apartment complex, were justified in believing some crime was intended. There-

fore, basing our decision on the totality of the circumstances, we cannot say the arresting officers did not have reasonable grounds to believe a felony had been committed. Furthermore, Mrs. Nicholson gave the officers a physical description of the defendant and said he told her he was living in Apartment 21C. It follows then at the time the arresting officers found the defendant at that location, they had reasonable grounds to believe the defendant had been the perpetrator, and properly placed him under arrest.

The fact that defendant was not tried on the charge of larceny of an automobile, for which he was arrested, is irrelevant since it is well established that the public prosecutor has the discretion to select the offense for which an accused will be charged. See *Jenkins v. State*, Okl.Cr., 508 P.2d 660 (1973). This is reviewed at the preliminary hearing and if the requisite probable cause is found the accused is bound over for trial. The case at bar presents no variance in this procedure, and we find no abuse of discretion in allowing the defendant to be tried for the offense of Forgery in the Second Degree. It then falls upon the State to prove the elements of the offense charged.

Since we have determined that probable cause existed for the arrest, we now turn to the admissibility of the defendant's confession. Defendant argues nothing happened to purge the illegality of the arrest and the confession was thus tainted and should not have been allowed into evidence.

Admission of a confession made subsequent to an illegal arrest is only admissible where it is proven the statement was voluntarily given and purged of the taint of the illegality. The principal question is whether the confession is a product of a free will and its voluntariness is a threshold requirement to its admissibility. *J.D. and D.R.D. v. State*, Okl.Cr., 558 P.2d 402 (1976); *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); and *Wong Sun v. United States*, supra. The United States Supreme Court said in *Brown v. Illinois*, supra, at 422 U.S. 603, at 95 S.Ct. 2261:

". . . The question whether a confession is the product of a free will under *Wong Sun* must be answered on the facts of each case. No single fact is dispositive. . . ."

Furthermore, the United States Supreme Court in *Brown* expressly rejected the view that the *Miranda* warning alone operates to dissipate the taint of any illegality in the arrest of a defendant upon the admissibility of his subsequent confession. To the same effect see *Yelloweagle v. State*, Okl.Cr., 551 P.2d 1130 (1976).

Having carefully examined the record and transcript in the instant case, we find the facts and circumstances surrounding the defendant's confession show it was voluntarily made. The record reflects that when asked for a handwriting sample by Officer Burrow, the defendant volunteered on his own the fact he had signed Gregory Nicholson's name to the car title. Additionally, when questioned by Detective Gramling, the defendant told him he had bought the title and car from an unidentified man for $100.00 cash during the second or third week of March, and when the officer asked if he signed the title by endorsing it on the back, the defendant said he had.

In reading the trial transcript we find no evidence of duress or compulsion and conclude the confession was the product of defendant's free and rational choice. Therefore, we find the defendant's confession was properly admitted into evidence and conclude that assignment of error to be without foundation.

Finally, the defendant argues that prosecutorial misconduct denied him a fair and impartial trial. More specifically, defendant points to certain statements made during closing argument as follows:

"THE COURT: You may proceed, Mr. Geb.

"MR. GEB: We get used to being prosecuted by defense lawyers, these lawyers who represent criminals day in and day out. We hear that all the time and it is always the State of Oklahoma and the District Attorney's office that gets criticized, because they think—

"MR. BLACK: Your Honor, I object to counsel saying 'representing criminals'. This man is supposed to be innocent until proven guilty beyond a reasonable doubt and at this stage I move for a mistrial for his prejudicial remarks.

"THE COURT: All right. Overruled and exceptions.

"MR. GEB: Of course, if they can talk about our office and criticize us enough they think the jury will forget all about the evidence and say 'Well, we will just prosecute the prosecutor.' That is what they talk about when they have nothing else to talk about."

Defendant asserts the prosecutor injected his personal opinion into the case, in violation of the rule laid down in such cases as *Ray v. State*, Okl.Cr., 510 P.2d 1395 (1973), by reference to the fact that prosecutors were accustomed to being prosecuted by defense lawyers who represent criminals day in and day out. He further argues that such remarks constitute an abusive comment on opposing counsel and his professional integrity. The defendant relies on a number of authorities to support his position, and we agree that the remarks complained of do constitute error.

This Court pointed out in *Fry v. State*, 91 Okl.Cr. 326, 218 P.2d 643 (1950), that counsel should refrain from casting reflections upon opposing counsel. More recently in *Chandler v. State*, Okl.Cr., 572 P.2d 285 (1977), we said that comments concerning personal attacks against the defense counsel will not be condoned, as they deny the defendant his constitutional right to be represented by counsel.

However, what must be borne in mind is that this Court in such a situation must determine the amount of prejudice which flowed from the impropriety. While we do not condone the language used, it is difficult to say that defendant was prejudiced thereby to the extent of requiring reversal. Here, defendant confessed he forged Gregory Nicholson's signature on the car title. Therefore, we are of the opinion that there was competent evidence upon which the jury based their verdict. The punishment assessed by the jury was only two years more than the minimum provided by law. We think, however, that the prosecutor's prejudicial remarks justify modification of the sentence imposed.

It is therefore the opinion of this Court that the sentence in this case should be *MODIFIED* from twelve (12) years' imprisonment to ten (10) years' imprisonment; and as modified is *AFFIRMED*.

BUSSEY, P. J., and BRETT, J., concur.