Cornel COOKS, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–83–198.

Court of Criminal Appeals of Oklahoma.

April 26, 1985.

Rehearing Denied May 29, 1985.

Stephen Louis Hilliary, Lawton, for appellant.

Michael C. Turpen, Atty. Gen., Thomas L. Spencer, Asst. Atty. Gen., Oklahoma City, for appellee.

OPINION

PARKS, Presiding Judge.

The appellant, CORNEL COOKS, was convicted of Murder in the First Degree pursuant to 21 O.S.1981, § 701.7(B) in the Comanche County District Court, Case No. CRF–82–812. Appellant was tried by a jury along with co-defendant Rodney Madson Masters, a/k/a William Wallace Troxell, before the Honorable William M. Roberts, District Judge. The jury found the appellant guilty of Murder in the First Degree and recommended a sentence of death. The trial court entered judgment and sentence in accord with the jury verdict. We affirm.

Jennie Ridling, a disabled eighty-seven-year-old woman, lived in a mobile home next door to her daughter in Lawton, Oklahoma. Her lifeless body was discovered by a neighbor on October 28, 1982. It was determined by police that her mobile home had been ransacked. Evidence further revealed that she had been raped and beaten about the head. She suffocated to death due to a tightly wrapped piece of gauze-like cloth around her head. According to the medical examiner, Ms. Ridling suffered nearly two hours before she died.

Beginning at approximately 8:30 p.m. on October 28, 1982, Lawton police investigated the crime scene and collected evidence. Evidence revealed one of the perpetrators apparently injured himself, as there was blood on and near the suspected point of entry. After gathering information and evidence at the crime scene, Lawton police detectives began questioning neighbors in the surrounding area. Following information received through their investigation, two detectives went to the appellant's residence, a few houses down the street. As they approached the house, one detective looked in a trash can in the appellant's front yard and found a bloody sock, which was confiscated for evidence. They then obtained a search waiver for the appellant's house from his common-law wife. At 5:15 a.m. on October 29th, the appellant arrived at the residence and was arrested, given his *Miranda* warnings, and taken to the police station for questioning. An officer returned to his residence and obtained, from appellant's common-law wife, permission to search her automobile, which appellant had driven just prior to his arrest. The officers recovered items later identified as the victim's. One item from the trunk was Jennie Ridling's checkbook.

The appellant denied knowledge of the burglary and the homicide. He later requested an attorney, and was advised by Officer Belcher that the officer could not speak with him any further unless the appellant requested officers to do so. On October 30, 1982 at approximately 5:00 p.m., Belcher was summoned to the county jail by the appellant. The appellant was read his *Miranda* rights again, and signed a "rights waiver" form. The appellant gave statements which were later introduced at trial.

## I.

In appellant's first assignment of error, it is asserted the trial court erred in admitting evidence of the bloody sock. Appellant claims this evidence was improperly seized by police in violation of his rights under the U.S. Const. amend. IV, and the Okla. Const. art. 2, § 30.

The appellant asserts that this "trash can search" was conducted without probable cause, and was unlawful, citing *People v. Edwards*, 71 Cal.2d 1096, 80 Cal.Rptr. 633, 458 P.2d 713 (1969); and *People v. Krivda*, 5 Cal.3d 357, 96 Cal.Rptr. 62, 486 P.2d 1262 (1971), *vacated* 409 U.S. 33, 93 S.Ct. 32, 34 L.Ed.2d 45 (1972), *reaffirmed on remand*, 8 Cal.3d 623, 105 Cal.Rptr. 521, 504 P.2d 457, *cert. den.* 412 U.S. 919, 93 S.Ct. 2734, 37 L.Ed.2d 145 (1973). These cases hold that a defendant maintains a reasonable expectation of privacy in curbside trash, and therefore a search of the same without probable cause is unlawful.

We disagree with our California brethren. We have generally held that one who abandons property has no standing to object to a search. *See Menefee v. State*, 640 P.2d 1381 (Okl.Cr.1983). *See also United States v. Jackson*, 544 F.2d 407 (9th Cir. 1976). We join those other jurisdictions holding curbside trash is abandoned property, over which appellant has no reasonable expectation of privacy. *United States v. Reicherter*, 647 F.2d 397 (3rd Cir.1981); *United States v. Dzialak*, 441 F.2d 212 (2nd Cir.1971); *State v. Fassler*, 108 Ariz. 586, 503 P.2d 807 (1972); *Croker v. State*, 477 P.2d 122 (Wyo.1970); *State v. Purvis*, 249 Or. 404, 438 P.2d 1002 (1968); *Smith v. State*, 510 P.2d 793 (Alk.1973), *cert. den.*, 414 U.S. 1086, 94 S.Ct. 603, 38 L.Ed.2d 489; *People v. Huddleston*, 38 Ill.App.3d 277, 347 N.E.2d 76 (1976); and *People v. Whotte*, 113 Mich.App. 12, 317 N.W.2d 266 (1982).

## II.

It is necessary to combine appellant's second and third propositions of error to adequately address the issues raised therein. The appellant first asserts he was illegally arrested, and claims the officers were acting without probable cause in making the arrest. He next asserts the confessions should have been suppressed as fruits of the purportedly illegal arrest.

A careful review of the record of this case leads this Court to the conclusion that the officers were following police procedures and investigatory patterns in an effort to obtain evidence in the hopes of locating the perpetrator of this crime. Their actions, although solid police work, did not, however, meet the burden of establishing probable cause. The arrest was, in fact, based on mere suspicion.

■ The test for determining the lawfulness of an arrest has been stated several times by this Court. It is, whether at the moment the arrest was made, facts and circumstances within the arresting officer's knowledge, and of which he had reasonably trustworthy information, were sufficient to warrant a prudent man to believe the arrestee had committed, or was committing, a crime. *Pitts v. State*, 649 P.2d 788 (Okl.Cr. 1982); *Lee v. State*, 637 P.2d 879 (Okl.Cr. 1982); *Backus v. State*, 635 P.2d 1021 (Okl. Cr.1981); and *Swain v. State*, 621 P.2d 1181 (Okl.Cr.1980). At the preliminary hearing, one of the officers testified that, indeed, he was acting only upon suspicion. Mere suspicion is not constitutionally sufficient basis for an arrest. *Greene v. State*, 508 P.2d 1095 (Okl.Cr.1973). Therefore, we find the arrest to be without probable cause, and thus, illegal.

■ This determination does not end our inquiry, however. We next must determine whether the confession was purged of the taint of the illegal arrest. The United States Supreme Court has indicated the proper procedure in determining this particular issue. In *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), the Court discussed the several factors considered to determine when a confession is "sufficiently an act of free will to purge the primary taint of an illegal arrest." *See also Wong Sun v. United States*, 371 U.S. 471, 486, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963). First, the Supreme Court stressed the threshold test of voluntariness. The Court then cited several factors to consider in determining whether the taint of the unlawful arrest has been dissipated:

1. The giving of *Miranda* warnings;
2. The "temporal proximity" of the arrest and confessions;
3. The presence of "intervening circumstances"; and
4. The "purpose and flagrancy of the official misconduct."

Applying these factors to the case at bar, it is clear the primary taint was, in fact, purged, and the confessions were properly admitted into evidence.

The record reveals the appellant received adequate *Miranda* warnings on more than one occasion prior to giving his statements. The arrest took place at approximately 5:15 a.m. on the October 29, 1982, and the appellant made his first statement nearly two days later. The length of time from the arrest to the confessions is sufficient to dissipate the coercive nature of incarceration. In fact, after he evoked his *Miranda* warning, he asked to speak to a particular officer before ultimately giving his statements. *See United States v. Manuel*, 706 F.2d 908 (9th Cir.1983).

It is abundantly clear the appellant freely and voluntarily gave the confessions of which he now complains. It is also apparent he freely and voluntarily signed a rights waiver form, and that he understood his rights as communicated to him by the arresting officers. The officers were most solicitious of the appellant's request, and carefully followed the proper procedures in obtaining appellant's confessions. There is absolutely no competent evidence the appellant was coerced or forced to sign the confessions. The officers were not acting flagrantly with the design to arrest appellant without probable cause for the purpose of prying a confession from him.

There is no indication they were acting in bad faith. It is apparent that the confessions are so attenuated from the illegal arrest as to dissipate the taint. We therefore find the confessions purged of the taint of illegality, and thus admissible. *Babek v. State*, 587 P.2d 1375 (Okl.Cr.1978); *J.D. v. State*, 558 P.2d 402 (Okl.Cr.1976).

### III.

■ Next, appellant alleges that evidence obtained from the search of the vehicle was the product of a purportedly illegal search and the fruit of an illegal arrest. The car was actually owned by appellant's common law wife. Officers obtained a "consent to search" from appellant's common law wife a short time after appellant had been taken to the police station. The consent given by appellant's common-law wife was voluntarily given, and there is no evidence of coercion or threats.

■ Furthermore, appellant has no standing to object to this search. Appellant cannot assert an objection to the search of the auto when he has neither a possessory or property interest in the car, nor an interest in the property seized, nor, otherwise, has some legitimate expectation of privacy. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). *See also Boutwell v. State*, 659 P.2d 322 (Okl. Cr.1983). We therefore find appellant's fourth proposition of error is meritless.

### IV.

■ Appellant next alleges the trial court failed to grant his request for a separate trial from his co-defendant. Appellant argues that error was caused by the admission of his co-defendant's out-of-court statement, based on *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

This Court has held many times that the decision to grant or deny a severance is left to the sound discretion of the trial court. This Court has also recognized that it is in the interest of both justice and economy to jointly charge and try those who have allegedly participated in the same criminal act, and we have urged trial courts to do so whenever possible. *Faubion v. State*, 569 P.2d 1022 (Okl.Cr.1979); *Dodson v. State*, 562 P.2d 916 (Okl.Cr.1977) (Brett, J., specially concurring); *See also Menefee v. State, supra*, and 22 O.S.1971, § 438. Absent an abuse of discretion resulting in prejudice to the appellant, the decision of the trial court will not be disturbed on appeal. *Chance v. State*, 539 P.2d 412 (Okl.Cr.1975). *See Lemmon v. State*, 538 P.2d 596 (Okl.Cr.1975) and *Haynes v. State*, 532 P.2d 1390 (Okl.Cr.1975).

In this case, denial of severance was proper. The trial was conducted in such a manner as to withdraw it from the purview of the *Bruton* rule, which held that severance is necessary when the State seeks to introduce the confession of a co-defendant which directly inculpates a non-confessing co-defendant through the testimony of a third party. The *Bruton* rule "prevents introduction of directly incriminating evidence without confrontation of the adverse party, in violation of the non-confessing co-defendant's Sixth Amendment rights." *Menefee v. State, supra*, at 1383.

The confessions in this case were edited to remove any reference of one co-defendant from the confession of the other co-defendant. All references to appellant Cooks were kept out of the testimony concerning Master's confessions. This method was used in *Menefee*, and we held this procedure was constitutionally sufficient. Therefore, there was no prejudice, and the trial court did not abuse its discretion by denying a severance.

The statements and testimony of Masters, the co-defendant, did not pit defendant against defendant. The only inconsistency between the statements and the testimony was to Master's activity, not the appellant's. Further, co-defendant Masters took the stand during the trial and was available for cross-examination by appellant. In *Taylor v. State*, 659 P.2d 374 (Okl.Cr.1983) we found when out-of-court statements of the defendant's co-defendant

were introduced, the appellant's right to confrontation was protected when the co-defendant took the stand.

We cannot say denial of the severance motion was improper. It appears that appellant's rights were protected by the careful action of the trial judge, and by the co-defendant taking the stand. We therefore find this proposition is without merit.

## V.

■ In his next assignment of error, the appellant asserts the trial court abused its discretion in not granting the same number of preemptory challenges appellant would have been allowed if the trials were separate.

The law is clear on this point. Title 22 O.S. 1981, §§ 622, 655 provide that if two or more defendants are tried jointly, they shall join in their challenges. *Driver v. State*, 490 P.2d 1109 (Okl.Cr.1971). Section 655 also provides "that when two or more defendants have inconsistent defenses, they shall be granted separate challenges ..." The appellant asserts that since this was a capital case, he should have received nine preemptory challenges, but we do not agree. The appellant relies on *Murray v. State*, 528 P.2d 739 (Okl.Cr.1974), which held that where the defenses of both defendants were *mutually antagonistic* pitting the defendants against one another, and where there was a limitation on preemptory challenges, denial of severance was an abuse of discretion. As discussed above, the defenses in this case were not antagonistic, and therefore were not within the *Murray* Rule. This assignment of error is without merit.

## VI.

In his seventh proposition of error, appellant alleges certain photographs were introduced that were gruesome, prejudicial, and thus caused fundamental error.

■ The admissibility of photographic evidence is within the sound discretion of the trial judge. Reversal obtains only when there is a clear abuse of such discre-

tion. *See Glidewell v. State*, 626 P.2d 1351 (Okl.Cr.1981); *Oxendine v. State*, 335 P.2d 940 (Okl.Cr.1958). *See Also Chaney v. State*, 612 P.2d 269 (Okl.Cr.1980), *modified on other grounds, Sub. nom., Chaney v. Brown*, 730 F.2d 1334 (10th Cir.1984).

■ The photographs, State's Exhibits No.'s 2, 3, 5 and 6, were black and white, 8" x 10" photos of the victim and the crime scene as it was found. They clearly show the position and location of the body, and also the manner in which material was wrapped around the victim's head and mouth. The photographs corroborate the medical examiner's testimony and other relevant evidence at trial. We find the probative value outweighs the prejudicial effect, and therefore, they were properly admitted. This proposition is without merit.

## VII.

■ Appellant also argues the medical examiner's autopsy report was inadmissible, and the admission fundamentally prejudiced the appellant.

Although the medical examiner's autopsy report is hearsay and not within the exceptions to the hearsay rule set out in Title 12 O.S. 1981, § 2803 (8)(a-e), the admission did not constitute reversible error. The report [two pages] is merely a summary of the more detailed testimony of the medical examiner. Although the report is cumulative, and should not have been allowed into evidence, this error does not require reversal. The report in no way contradicted the medical examiner's testimony. Further, there is no evidence of it having any prejudicial effect on the jury due to its admission.

Our examination of the entire record reveals that the proof of appellant's guilt is overwhelming. Not only are the confessions valid, they are corroborated by police investigation and expert testimony. Therefore, no reasonable possibility exists that the admission of this report prejudiced the appellant.

## VIII.

Appellant raises as his tenth assignment of error that a jury instruction regarding evidence of mitigation introduced in the second stage was improper and caused fundamental error. We disagree.

The instruction referred to "minimum mitigating circumstances" that were introduced in the second stage by the co-defendant Masters. The appellant fails to cite any cases supporting this allegation of error, and, normally, this Court does not search for applicable law with respect to such unsupported allegations. *See Carroll v. State,* 620 P.2d 416 (Okl.Cr.1980). However, considering the importance of instructions in a capital case, we will address this particular allegation. It appears the trial court was attempting to circumvent error in the second stage. The instruction itself explains the jury's duty to examine any mitigating circumstances, of which the two were set out in the challenged instruction as the minimum. The State contends the trial court was explaining that the jury should, at the very least, consider those factors, as well as any other circumstances supported by the evidence. We agree with the State's analysis. The instruction was proper, although the trial court could have left out the word "minimum", and no error occurred in giving it to the jury. The instructions, as a whole, sufficiently state the law. *See Nealy v. State,* 636 P.2d 378 (Okl.Cr.1981). *See also Chaney v. State, supra* at 279–280.

## IX.

The appellant next asserts the trial judge committed reversible error when he interrogated co-defendant's counsel in chambers, and admonished him that he was misstating the law during closing argument. This argument is meritless. A review of the record reveals the trial judge meticulously handled a difficult situation without any indication of prejudice or any attempt to relay to the jury that counsel was trying to mislead them.

It is clear from the record that counsel for co-defendant Masters was misstating the law. The trial judge interrupted and withdrew to chambers. He then explained what he perceived as the problem. The trial judge then added two instructions to the first stage instructions which clarified for the record when malice aforethought or premeditation is necessary for murder in the first degree, and when malice aforethought is not necessary for first degree murder, that being felony-murder.

The court acted properly and protected the integrity of the jury system by clarifying misleading instructions and argument. This action by the trial judge is commendable. We have held when the conduct of the trial judge does not show bias or prejudice, it is not reversible error. *See Felts v. State,* 588 P.2d 572, 577 (Okl.Cr.1978). *See also Shipman v. State,* 639 P.2d 1248 (Okl. Cr.1982); and *Sowle v. State,* 424 P.2d 993 (Okl.Cr.1967). We find no error in the trial judge's action, or the added instructions.

## X.

In his twelfth assignment of error, appellant alleges the district attorney inflamed the passions and prejudice of the jury by referring to the victim's thoughts and feelings at the time of the attack.

Prosecuting attorneys should refrain from trying to appeal to passions and prejudice, thus invoking the sympathy of the jury. *Williams v. State,* 658 P.2d 499 (Okl.Cr.1983); *Scott v. State,* 649 P.2d 560 (Okl.Cr.1983). However, in this case, an objection was made and sustained as to the comment, and the jury was admonished. The comment standing alone would not have been prejudicial enough to reverse the conviction. *Chaney v. State, supra.* The overall effect of the comment is greatly outweighed by the overwhelming evidence of guilt.

## XI.

Pursuant to 21 O.S.1981, § 701.13, this Court must review the following factors when the death sentence is imposed:

1. Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;

2. Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in 21 O.S.1981, § 701.-12(4); and

3. Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

We find that the sentence of death was not imposed under the influence of passion or prejudice or any other arbitrary factor. Appellant has alleged in this eighth assignment of error that the jury was racially biased. He claims the jury imposed the death penalty on him, a black man, while his co-defendant, who was white, received life imprisonment. We find no evidence of prejudice on the part of the jury. The evidence showed the defendant was far more culpable than the co-defendant. He beat the victim, bound her head, and then left her to suffocate. Clearly, the punishment reflects the greater culpability of the appellant. The record is devoid of any indication of bias or prejudice, or that race was an issue at the trial. We hold the sentence was not imposed under the influence of passion, prejudice or any other arbitrary factor.

Secondly, it is clear the jury found all three of the aggravating circumstances alleged did apply to appellant, and further, that the jury's finding was based on ample evidence.[1]

The jury found the defendant had been convicted of a crime involving the use, or threatened use, of violence. The defendant had previously been convicted of first degree burglary and robbery by force. Further, the jury also found a probability the defendant would be a continuing threat to society. There was evidence as to past criminal acts to support this aggravating circumstance. The jury found the murder especially heinous, atrocious or cruel. The evidence in this case reveals a brutal attack and a horribly cruel death. The material was wrapped so tightly around the victim's head that she slowly suffocated to death. The defendant also found it necessary to brutally rape, beat and rob this eighty-seven year old victim. There is no doubt this was a heinious, atrocious *and* cruel murder considering the appellant's vicious and pitiless attitude, and the brutal manner in which the victim was killed. *See Nuckols v. State*, 690 P.2d 463 (Okl.Cr.1984).

Since the appellant was convicted under 21 O.S.1981, § 701.7(B), in which intent to kill is not an element of the offense, it is important to examine the application of *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), to this case. The United States Supreme Court, in that case, focused on the culpability of the defendant in a felony-murder case. The Supreme Court said:

> The focus must be on his culpability, not on that of those who committed the robbery and shot the victims, for we insist on 'individualized consideration as a constitutional requirement in imposing the death sentence,' *Lockett v. Ohio*, 438 U.S. 586, 605, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978) (footnote omitted), which means that we must focus on 'relevant facets of the character and record of the individual offender.' *Woodson v. North Carolina*, 428 U.S. 280, 304, 96

---

**1.** **BILL OF PARTICULARS**

Prior to trial, the State has filed a document entitled Bill of Particulars. In this Bill of Particulars, the State alleged the Defendants should be punished by death, because of the following aggravating circumstances:

With reference to Cornel Cooks:

1. The Defendant was previously convicted of a felony involving the use or threat of violence to a person;
2. The murder was especially heinous, atrocious or cruel;
3. The existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.

S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976). 102 S.Ct. at 3377.

This Court, in *Hatch v. State,* 662 P.2d 1377 (Okl.Cr.1983), said:

> We do not read *Enmund* to be an absolute ban on imposition of the death penalty on one who is convicted of first degree murder through the vehicle of the felony murder doctrine. Indeed the Supreme Court further stated in *Enmund,* 'It would be very different if the likelihood of a killing in the course of the robbery were so substantial that one should share the blame for the killing if he somehow participated in the felony. 102 S.Ct. at 3378,' at 1383.

Unlike the *Hatch* case, which was remanded for sentencing in light of *Enmund,* the case at bar clearly reflects the culpability of the appellant and also the "relevant facets of the character of the individual offender," and, thus, withstands the scrutiny required for the imposition of the death sentence for felony murder.

Finally, in comparing this sentence to penalties imposed in similar cases, we find the penalty is not excessive or disproportionate considering the defendant and his crime. The mere fact appellant's co-defendant received life imprisonment does not mean the sentence imposed was dispro-portionate or excessive, considering the evidence of the appellant's greater culpability. *Brogie v. State,* 695 P.2d 538, 56 O.B.J. 56, (Okl.Cr.1985).

We have compared this case to those capital cases affirmed,[2] reversed[3] or modified[4] by this Court on appeal. Finding the appellant received a fair trial at both stages of the proceeding, one sufficiently free of passion and prejudice, we leave the assessment of death undisturbed.

Accordingly, for the foregoing reasons, we find the judgment and sentence should be, and hereby is, AFFIRMED.

BRETT, J., concurs.

BUSSEY, J., concurs in results.

---

**2.** *Cartwright v. State,* 695 P.2d 548 (Okl.Cr. 1985); *Brogie v. State,* 695 P.2d 538, 56 O.B.J. 56 (Okl.Cr.1985); *Bowen v. State,* 55 O.B.J. 2520 (Okl.Cr.1985); *Stout v. State,* 55 O.B.J. 2269 (Okl.Cr.1985); and *Nuckols v. State,* 690 P.2d 463 (Okl.Cr.1984); *Robison v. State,* 677 P.2d 1080 (Okl.Cr.1984); *Dutton v. State,* 674 P.2d 1134 (Okl.Cr.1984); *Stafford v. State,* 669 P.2d 285 (Okl.Cr.1983); *Coleman v. State,* 668 P.2d 1126 (Okl.Cr.1983); *Stafford v. State,* 665 P.2d 1205 (Okl.Cr.1983); *Davis v. State,* 665 P.2d 1186 (Okl.Cr.1983); *Ake v. State,* 663 P.2d 1 (Okl. Cr.1983); *Parks v. State,* 651 P.2d 686 (Okl.Cr. 1982); *Jones v. State,* 648 P.2d 1251 (Okl.Cr. 1983); *Hays v. State,* 617 P.2d 223 (Okl.Cr.1980); and, *Chaney v. State,* 612 P.2d 269 (Okl.Cr.1980), *modified* on other grounds, *sub nom., Chaney v. Brown,* 730 F.2d 1334 (10th Cir.1983).

**3.** *Tobler v. State,* 688 P.2d 350 (Okl.Cr.1984); *White v. State,* 674 P.2d 31 (Okl.Cr.1983); *Coleman v. State,* supra; *Hatch v. State,* 662 P.2d 1377 (Okl.Cr.1983); *Smith v. State,* 659 P.2d 330

(Okl.Cr.1983), *rev'd,* —— U.S. ——, 104 S.Ct. 324, 78 L.Ed.2d 297 (1983); *on remand,* 55 O.B.A.J. 371 (Okl.Cr.1984) (Unpublished); *Hall v. State,* 650 P.2d 893 (Okl.Cr.1982); *Brewer v. State,* 650 P.2d 54 (Okl.Cr.1982); *Cox v. State,* 644 P.2d 1077 (Okl.Cr.1982); *Giddens v. State,* No. F–89– 164 (Okl.Cr.Nov. 17, 1981); *Hager v. State,* 1369 (Okl.Cr.1980).

**4.** *Kelly v. State,* 55 O.B.J. 2525 (Okl.Cr.1984); *Eddings v. State,* 616 P.2d 1159 (Okl.Cr.1980); as *modified,* 55 O.B.J. 1633 (Okl.Cr.1984); *Morgan v. State,* No. F–79–487 (Okl.Cr. Nov. 14, 1983); (Unpublished); *Johnson v. State,* 665 P.2d 815 (Okl.Cr.1982); *Glidewell v. State,* 663 P.2d 738 (Okl.Cr.1983); *Jones v. State,* 660 P.2d 634 (Okl.Cr.1983); *Driskell v. State,* 659 P.2d 343 (Okl.Cr.1983); *Boutwell v. State,* 659 P.2d 322 (Okl.Cr.1983); *Munn v. State,* 658 P.2d 482 (Okl.Cr.1983); *Odum v. State,* 651 P.2d 703 (Okl.Cr.1982); *Burrows v. State,* 640 P.2d 533 (Okl.Cr.1982); *Franks v. State,* 636 P.2d 361 (Okl.Cr.1981); *Irvin v. State,* 617 P.2d 588 (Okl.Cr.1980).