Ronnie H. DISHEROON, Appellant,

v..

The STATE of Oklahoma, Appellee.

No. F–73–305.

Court of Criminal Appeals of Oklahoma.

Jan. 23, 1974.

Thomas Dee Frasier, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Stan Chatman, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Ronnie H. Disheroon, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court, Bryan County, Case No. CRF–72–127, for the offense of Unlawful Delivery of Marijuana; his punishment was fixed at ten (10) years imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Jack E. McGahey testified that he was the District Attorney for the 19th District, and that since the preliminary hearing, one of the State's witnesses (Jack Wilkerson) had disappeared and was unable to be found. The trial court held a hearing outside the presence of the jury to determine if the State had used due diligence in an effort to produce Witness Jack Wilkerson, for trial. The court, after determining that the State had used due diligence in an effort to produce Jack Wilkerson, and determining that cross-examination of this witness was afforded the defendant at the preliminary hearing but was waived, admitted the testimony of Jack Wilkerson and allowed it to be read to the jury.

The testimony of Wilkerson, as read to the jury, stated that on October 1, 1972, he was an undercover agent for Mr. Ed. Loffi of the Oklahoma Bureau of Investigation. At about 1:25 that morning, he and an officer Thurman were in a night club known as "Pappy's Play Pen" when a Mr. Davis (co-defendant) asked Wilkerson if he wanted to buy some marijuana. After agreeing to, Davis said that he would have to accompany him to another club where the defendant was to obtain it. The two left in Wilkerson's car and went to a second club known as "Our Club." Davis went into the club, came back outside and went about 30 feet ahead of Wilkerson's car to the defendant's car. There he met the defendant who opened the car and appeared to reach somewhere into the front interior. The defendant pulled out two sandwich-type plastic bags and handed them to Davis who then went to Wilkerson's car and got in the front seat. After Wilkerson exchanged a twenty dollar bill for the two bags, Davis got out of the car and handed defendant the money. Wilkerson left to turn the bags over to Mr. Loffi, who took them to the Crime Bureau.

Edward Loffi testified that he was an agent for the Oklahoma State Bureau of Investigation and was working in Bryan County on the morning in question. From a distance he saw Wilkerson and some other man leave a night club. He followed them to a second club and, through field glasses, observed the events as described by Wilkerson. He was, however, unable to see into the car to observe the alleged exchange, and he was never close enough to be able to identify Davis or the defendant. He received two plastic baggies containing a green, leafy substance from Mr. Wilkerson, which he initialed and kept in his possession until he turned them into the evidence locker at the Oklahoma State Bureau of Investigation laboratory. He identified State's exhibit # 4 as being the two baggies he received from Wilkerson and turned over to the State Crime Bureau.

Donald Wayne Clodfelter testified that he was a forensic chemist for the Oklahoma State Bureau of Investigation. He identified State's exhibit # 4 as being the evidence which he removed from the laboratory's evidence locker. He further testified he examined the substance and determined it to be marijuana.

Defendant testified that he was a professional musician and was at "Our Club" on the night in question with his girlfriend when James Davis came in. The three of them later walked outside with two other men. Defendant then asked for information about a bass player for a band. They went to a car and Davis got the address for a certain bass player out of the glove compartment, and handed it to the defendant. Shortly thereafter, Davis went to some other man and the rest of them walked back into the club. Defendant denied giving any green, leafy substance to Wilkerson or Davis, though he did see both of them on the night in question.

Lucile Disheroon, defendant's mother, testified that Wilkerson came to her house, offered to help her son, but needed to borrow five hundred dollars. As substantiated by two separate checks in the custody of the court, he borrowed this amount two different times. He told her he would come to testify in defendant's behalf.

The defendant's first and second propositions of error assert that the trial court erred in admitting into evidence the testimony of Jack Wilkerson taken at the preliminary hearing, as the State failed to prove the unavailability of this witness, and this constituted a denial of defendant's right to confrontation.

The record reveals that Jack Wilkerson was unavailable for trial and the District Attorney offered in evidence the transcript of this witness' testimony taken at the preliminary hearing; the defendant objected, and the trial court held a hearing for determining if the State had exercised due diligence to locate Jack Wilkerson. After this hearing, the trial court admitted the transcript and allowed it to be read to the jury. The record further reveals that defendant waived cross-examination of this witness at the preliminary hearing and, therefore, no cross-examination of this witness went before the jury.

In the case of In re Bishop, Okl.Cr., 443 P.2d 768, this Court held in Syllabi Three:

"The accused's failure to cross-examine a witness at preliminary hearing may constitute a waiver of the right of confrontation at a subsequent trial, as being an intentional relinquishment or abandonment of a known right or privilege, if the prosecution properly shows that the witness is actually unavailable to testify at the subsequent trial, and that sufficient effort has been exercised to produce the witness to testify."

Further, the Court went on to state, at page 772 of the Official Opniion, the following:

"We are of the opinion, however, that the Honorable United States Supreme Court decision does not preclude the use of such preliminary hearing testimony, in proper circumstances. The transcript of testimony recorded at the preliminary hearing may be read at the accused's trial when those circumstances exist. But in that instance, the State is required to show that a diligent effort has been made to locate the missing witness, *and that he is actually unavailable.* The Supreme Court said in reference to this question:

'* * * [T]here may be some justification for holding that the opportunity for cross-examination of testimony at a preliminary hearing satisfies the demands of the confrontation clause where the witness is shown to be actually unavailable * * *.' (Emphasis added.)"

In the instant case we find, from the record, as the trial court did, that the State did show due diligence was exercised in an effort to produce witness Jack Wilkerson for trial. Therefore, we find no error in the trial court's admitting the testimony of Jack Wilkerson taken at the preliminary hearing.

The defendant's third proposition asserts that the prosecution of this case as a separate action violates every standard of fairness and justice and is a denial of due process.

The defendant's argument, under this proposition, is that he was alleged to have

delivered marijuana to two undercover agents on four different occasions (September 30, 1972; October 1, 1972; October 7, 1972; and October 11, 1972), all occurring in the City of Durant, Oklahoma; that this action constituted one continuing offense and would not support four separate and distinct offenses and, therefore, the act of trying him on more than one charge constitutes double jeopardy.

█ After carefully reviewing the record in the three cases [1] in which he was convicted, we are of the opinion that each sale was a separate and distinct offense and find this proposition to be without merit. See Loane v. State, Okl.Cr., 490 P. 2d 759.

█ Defendant's fourth proposition asserts the trial court erred in overruling his Demurrer to the State's evidence. This Court has consistently held that where there is competent evidence in the record from which the jury could reasonably conclude the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts. See Williams v. State, Okl.Cr., 373 P.2d 91 (1962). We, therefore, find this proposition to be without merit.

The judgment and sentence is, accordingly

Affirmed.

BLISS, P. J., concurs.

BRETT, J., dissents.

BRETT, Judge (dissenting).

I must respectfully dissent to this decision. The majority opinion properly quotes the third paragraph of the syllabus to In re Bishop, supra, but that statement provides that failure to cross-examine at preliminary examination MAY constitute a waiver of the right of confrontation. Consequently, the determination of whether or not such failure to cross-examine, constitutes a waiver depends upon the particular facts of each case. In this appeal I feel that the facts to not constitute the waiver referred to in Bishop.

In the instant appeal, Jack Wilkerson was a hired law enforcement officer, who defense counsel had every right to expect would be present at trial. In addition, Jack Wilkerson was the principal witness against the defendant, and he was allegedly the person who made the purchase of marihuana from defendant. Therefore, I can clearly distinguish the situation in this appeal from one in which another witness becomes unavailable to testify, and wherein the preliminary transcript is allowed to be used, as being proper circumstances referred to in Bishop. Under the circumstances of the instant appeal, I cannot agree that proper circumstances exist to meet the confrontation provisions of both the United States Constitution and the Oklahoma Constitution. It is a foregone conclusion that the examination of a witness at preliminary examination is not as searching as that engaged in at trial. Notwithstanding the fact that the District Attorney testified concerning such efforts as he exerted to find the missing witness, Jack Wilkerson, it is not such diligence alone which is intended to meet the confrontation requirements. The United States Supreme Court stated in Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1967):

"To suggest that failure to cross-examine in such circumstances constitutes a waiver of the right of confrontation at

1. The defendant was charged and convicted in F–73–316 for the crime of Unlawful Delivery of Marijuana and was sentenced to serve ten (10) years and pay a fine of Five Thousand ($5,000.00) Dollars; PC–73–160, charged and convicted for Unlawful Delivery of a Controlled Dangerous Substance, Phencyclidine (PCP)—ten (10) years imprisonment (the appeal was affirmed and mandate issued); F–73–305, charged and convicted for the offense of Unlawful Delivery of Marijuana—ten (10) years imprisonment (instant case).

a subsequent trial hardly comports with this Court's definition of a waiver as 'an intentional relinquishment or abandonment of a known right or privilege.' Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); Brookhart v. Janis, 384 U.S. 1, 4, 86 S.Ct. 1245, 1246, 16 L.Ed.2d 314 (1966)."

Admittedly, in Barber the state knew the whereabouts of the witness, and no showing of diligence was made by the prosecution. But of equal importance in the instant matter is the fact that the prosecution witness was allegedly a recognized law enforcement officer. The record reflects that the prosecution witness was either "bought off" by defendant's mother, or that his credibility was of such questionable nature that he found other reasons for borrowing a thousand dollars from defendant's mother for the purpose of leaving the country. Nonetheless, as the record now exists defendant was unable to test the prosecution witness' credibility by proper cross-examination. Consequently, I conclude that the facts herein are not sufficient to constitute "proper circumstances" referred to in *In re Bishop,* supra. I concede that the District Attorney testified concerning the efforts he made to locate Jack Wilkerson, and that according to his testimony that effort, under other circumstances, might constitute sufficient diligence to show the unavailability of the witness; but under these facts, I cannot concede that such diligence alone waives the confrontation requirements.

Further, I believe the separate charges should have been filed under the provisions of 22 O.S., 1973, § 404, as separate counts in one information. I believe it is fundamentally unfair for the law enforcement officers to make consecutive buys of controlled dangerous substances in order to file separate charges against any defendant. Under such procedures, the law enforcement officers are permitted to determine the extent of punishment a defendant is to receive, which is a judicial function. Consequently, as I see the proper administration of justice, these several incidents should be included as separate counts in one information for the benefit of the jury. The initial objective of law enforcement having been accomplished, the subsequent incidents merely go to corroborate the charge of distribution. Thereafter, either the jury or the court should set the extent of punishment premised upon the facts presented.

Therefore, having concurred in the first appeal lodged by defendant for the illegal distribution of controlled dangerous substances, which occurred immediately prior to this incident, I feel compelled to dissent to this decision.