Billy Dale FAUBION and Joe Dean Brady, Appellants,

v.

The STATE of Oklahoma, Appellee.

Nos. F-77-260 and F-77-261.

Court of Criminal Appeals of Oklahoma.

Sept. 29, 1977.

Mac Oyler, Oyler & Smith, Oklahoma City, for Billy Dale Faubion

Michael W. Mitchel, Annis, Mitchel & Fetzer, Woodward, for Joe Dean Brady.

Larry Derryberry, Atty. Gen., Harold T. Garvin, Jr., Asst. Atty. Gen., for appellee.

## OPINION

BRETT, Judge:

Appellants Billy Dale Faubion and Joe Dean Brady, hereinafter referred to as defendants, were charged in the District Court, Roger Mills County, Case No. CRF–76–6, with the offense of Larceny of Controlled Drugs, After Former Conviction of a Felony, and Larceny of Controlled Drugs, respectively, in violation of 63 O.S.1971, § 2–403. They were tried by a jury, convicted and sentenced to imprisonment in the State penitentiary for terms of fifty (50) years and ten (10) years respectively. The appeals of these defendants have been consolidated, and the defendants have perfected a timely appeal to this Court.

Briefly stated, the facts adduced at trial are as follows. On the afternoon of May 4, 1976, Eddie Tom Lakey, owner of the Cheyenne Professional Drug Store in Cheyenne, Oklahoma, locked his store at 5:30 p. m. When he returned the next morning at 8:30 a. m., he found the attic ladder down and a hole in the roof. Subsequent investigation determined that various drugs were missing. Also missing from the drugstore were a set of antique wooden scales used to measure out medicines and a pocket calculator.

On the morning of May 6, 1976, the defendants visited the home of Frances Louise Smith and her daughter Teresa Marie Hall at approximately 3:00 to 3:30 a. m. They had in their possession a plastic bag and a small black suitcase apparently containing various drugs. The defendants also had in their possession a set of scales and a pocket calculator. These drugs, as identified by Mrs. Smith, were of the same type as those reported missing from the Cheyenne Professional Drug Store. Defendant Faubion told them that he and defendant Brady had stolen the drugs from a drugstore in Cheyenne, Oklahoma, and requested her aid in selling said drugs. Mrs. Smith refused to aid in such an enterprise, and the defendants subsequently departed at 6:30 a. m. on the same morning.

On May 18, 1976, Ms. Hall accompanied the defendants to a motel where with the aid of a Physicians' Desk Reference, she helped the defendants identify various drugs purportedly belonging to defendant Brady, which she was later told by defendant Faubion were the same drugs which had been taken from the Cheyenne drugstore. Later, Ms. Hall accompanied defendant Faubion to an isolated location where various drugs were stashed. These drugs were later recovered and introduced at trial. The defendants were arrested on May 31, 1976.

On May 22, at the behest of agent Sid Cookerly of the OSBI, Mrs. Smith searched her home for possible evidence and found two bottles of pills which were subsequently introduced at trial. There was testimony at trial that both defendants had opportunity to leave the bottles in the location where they were found.

Due to the determinative nature of the defendants' fourth assignment of error, we need not address all of the assignments of error asserted by the defendants.

In their fourth assignment of error the defendants contend that various errors by the trial court prejudiced the defendants' right to a fair and impartial trial. The defendants contend that the trial court (1) allowed the question of relevancy and

materiality of evidence to go to the jury; (2) defined reasonable doubt in terms which could be construed as preponderance of evidence; (3) constantly interjected oral instructions to the jury throughout the trial; and, (4) commented upon the right of the defendants not to take the stand.

A review of the record indicates that many of the errors asserted in this assignment of error were not properly preserved by timely objection. Furthermore, it would appear that the trial judge's comment on the defendant's right to remain silent was invited by questions concerning the same by a counsel for the defense during voir dire. However, in view of the cumulative effect of these errors we feel that the defendants' rights were prejudiced to such a degree that they were deprived of a fair trial and fundamental justice. See, *Crow v. State*, Okl.Cr., 551 P.2d 279 (1976), and *Lowrey v. State*, 87 Okl.Cr. 313, 197 P.2d 637 (1948). Also see, *Warthen v. State*, Okl.Cr., 559 P.2d 483 (1977).

In summary, upon retrial of this case we anticipate that (1) questions of law, such as relevance and materiality, will not be allowed to go to the jury but should be passed on by the court prior to submission to the jury; (2) the court will refrain from any appearance of defining reasonable doubt for the jury; (3) any instructions to the jury will be made in compliance with 22 O.S.1971, §§ 856 and 894; and, (4) the trial judge will make no comment or explanation of the defendants' right to decline to take the stand.

Also, defendant Faubion asserts that it was error for the court to instruct the jury under the Habitual Criminal Act rather under the specific enhancement provisions provided by the Uniform Controlled Substance Act. It is provided in 63 O.S. 1971, § 2–403, that:

"Any person found guilty of larceny, burglary or theft of controlled dangerous substances is guilty of a felony punishable by imprisonment for a period not to exceed ten (10) years. *A second or subsequent offense under this section* is a felo-

ny punishable by imprisonment for not less than four (4) nor more than twenty (20) years. Convictions for second or subsequent violations of this section shall not be subject to statutory provisions or suspended sentences, deferred sentences or probation." (Emphasis added)

Clearly, 63 O.S.1971, § 2–403, makes specific provision for enhancement of punishment and 21 O.S.1971, § 11, provides that specific provisions for punishment control over general provisions.

However, the State contends that the instant case would not fall under the enhancement provision of 63 O.S.1971, § 2–403, since the prior conviction upon which enhancement was based was not obtained under the same section as was the conviction for the instant case. While the State emphasizes the words, "under this section," it attempts to argue this language out of context. The language "under this section" refers only to the second or subsequent offense. To qualify as a second or subsequent offense under the Uniform Controlled Dangerous Substances Act, the prior conviction need only be obtained under any section of this Act. See, 63 O.S.1971, § 2–412.

In the instant case, it appears from the record that the prior conviction upon which enhancement was based was for possession of a controlled drug. Therefore, the enhancement provision of Section 2–403 is specifically applicable in this case, and the jury should be so instructed upon retrial in the event that the jury again return a finding of guilt.

▇ Finally, defendant Brady assigns as error the trial court's failure to grant his motion for severance. He contends that various statements made by his co-defendant outside the presence of himself, and exhibits not directly connected to himself, which would not have been admissible against him singularly had he been granted a severance, were introduced into evidence and, therefore, worked to his prejudice.

A review of the record indicates that there was evidence introduced by the State that defendant Brady was indeed present

when the declarations were made, and this defendant failed to deny said statements. See, *Flowers v. State*, Okl.Cr., 457 P.2d 833 (1969); *Overton v. State*, Okl.Cr., 489 P.2d 799 (1971).

Furthermore, in *Dooley v. State*, Okl.Cr., 484 P.2d 1324, 1327 (1971), we observed that:

".   .   . It has long been the law of this state that where two or more persons have acted in concert in the commission of a crime, the acts and declarations of one co-actor in pursuance of the common act or design are admissible against any other co-actor on trial for the crime. .   .   ." (Citations omitted)

See, 22A C.J.S. Criminal Law § 754, et seq., for a detailed explanation of this exception to the hearsay rule. In *Holmes v. State*, 6 Okl.Cr. 541, 119 P. 430, 435 (1911), this Court ruled that:

"When a conspiracy is entered into to do an unlawful act, all persons who engage therein are responsible for all that is done in pursuance thereof by any of their co-conspirators until the object for which the conspiracy was entered into is fully accomplished. This responsibility is not confined to the accomplishment of the common design for which the conspiracy was entered into, but it extends to and includes collateral acts incident to and growing out of the common design. .   ."

See, *Oxendine v. State*, Okl.Cr., 350 P.2d 606 (1960). In *Holmes v. State, supra*, where the conspiracy was to perpetrate a robbery and divide the fruits, this Court held that the conspiracy continued to exist until the money was divided.

In the instant case, the evidence indicates that the defendants, within two days after the time of the alleged larceny, went to the home of Mrs. Smith and her daughter, Ms. Hall, with the hope of obtaining aid in selling the stolen drugs. Further, there is evidence that later the aid of Ms. Hall was enlisted by the defendants to help identify the same drugs to facilitate the sale of said drugs. It is arguable that this was a con-

tinuing conspiracy to sell the items obtained by larceny in this case. Therefore, assuming such a continuing conspiracy, the evidence arising out of the acts and declarations of defendant Faubion would clearly have been admissible against defendant Brady even if a severance had been granted.

 Finally, we reiterate that "a severance is not a matter of right on the part of the defendant, but rests entirely in the judgment of the trial court, and a denial of motion for severance will not be disturbed on appeal unless there is a clear showing of an abuse of discretion." *Chance v. State*, Okl.Cr., 539 P.2d 412, 416 (1975). See, *Lemmon v. State*, Okl.Cr., 538 P.2d 596 (1975); *Haynes v. State*, Okl.Cr., 532 P.2d 1390 (1975); *Grimes v. State*, Okl.Cr., 528 P.2d 1397 (1974). Further, this Court has previously encouraged the proper use of this State's joinder statutes, 22 O.S.1971, § 436, et seq., observing that such would operate to reduce the number of trials and the attendant expenses to the State and to the defendant. See the special concurrence to *Dodson v. State*, Okl.Cr., 562 P.2d 916 (1977), wherein the views of this Court were set out concerning the application of 22 O.S.1971, § 436, et seq., and the protection incorporated therein.

For the above and foregoing reasons, the judgments and sentences of the trial court are hereby *REVERSED* and *REMANDED* for a new trial not inconsistent with the findings of this Court.

BUSSEY, P. J., concurs.