Peter MATRICIA, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F-83-732.

Court of Criminal Appeals of Oklahoma.

Oct. 10, 1986.

Alfred L. Bowman, Altus, for appellant.

Michael C. Turpen, Atty. Gen., Robert W. Cole, Asst. Atty. Gen., Oklahoma City, for appellee.

### OPINION

BRETT, Judge:

Appellant, Peter Matricia, was tried by jury for the crime of Murder in the First Degree in Case No. CRF–78–41, in the District Court of Jackson County. Defendant was represented by counsel, now deceased. The jury returned a verdict of guilty and assessed punishment at life imprisonment. The trial court sentenced in accordance with the jury's verdict, and from this judgment and sentence appellant has properly appealed to this Court. This Court granted appellant an appeal out of time because of the death of his trial attorney and he is represented in this appeal by court-appointed counsel.

In the early morning hours of November 18, 1977, a homicide was committed in the parking lot of the Centerstage Club. The club had been named "The Godfather" and prior to that "The Horseshoe Club". Six persons were indicted for the murder and

stood trial jointly. In this opinion we consider only the appeal of Peter Matricia.

The deceased, James William Farley, drove into the parking lot of the Centerstage Club and was confronted by appellant and others. The deceased was told to get out of his vehicle but he declined to do so by moving his head left and right. When the deceased began backing up his car the appellant fired a shot into the front windshield. The deceased then placed the car in drive and proceeded toward appellant who fired at the car again. As the car coasted by the appellant he fired three more shots into the car. The car coasted into the restaurant sign. Another of the defendants attempted to fire his weapon but it apparently misfired. After the commotion in the parking lot, the police and an ambulance were summoned and the crime scene was secured. The deceased was found slumped over the front seat of his car with a bullet in his left temple. His body was removed to the Jackson Hospital Emergency Room where he was pronounced dead on arrival. An autopsy was performed and the cause of death was determined to be a gunshot wound to the head. The pathologist testified that the wound did not result in instantaneous death, although the deceased immediately was rendered unconscious and failed to regain consciousness. On November 21, appellant was advised of his constitutional rights and voluntarily made a statement. In that statement the defendant admitted that he continued to fire as the car rolled past him. He also stated that he was in the parking lot waiting for the deceased to arrive in order that he might reason with him, notwithstanding the fact that he armed himself with a gun.

Some twenty-five witnesses testified during appellant's trial that occurred from June 12 through June 19, 1978. After the jury was properly instructed it returned a verdict finding defendant guilty of first degree murder and assessed his sentence at life imprisonment.

Appellant's first assignment of error alleges that he was denied a fair trial because of the prejudicial pretrial publicity and the failure of the court to grant a change of venue. In *Hammons v. State*, 560 P.2d 1024, 1029 (Okl.Cr.1977), this Court set forth:

> When considering a motion for a change of venue, the presumption of law is that a defendant can get a fair and impartial trial in the county in which the offense charged was committed. The presumption is rebuttable, but the burden of persuasion is upon the defendant. A mere showing that pretrial publicity was adverse to the defendant is not enough. The defendant must show by clear and convincing evidence that jurors were specifically exposed to the publicity and that he was thereby prejudiced.

■ Adverse pretrial publicity does not of itself, establish a reasonable probability that a person cannot obtain a fair and impartial jury in a criminal trial. Hence, it rests within the discretion of the trial court whether or not a change of venue shall be granted and this Court will not reverse that decision absent a showing of abuse of discretion by the court. This Court stated in *Wooldridge v. State*, 659 P.2d 943, 946 (Okl.Cr.1983), "The granting or denial of a change of venue is within the sound discretion of the trial court, whose ruling will not be disturbed absent an abuse thereof.... Whether an abuse has occurred depends on whether the defendant was prevented from receiving a fair trial by an impartial jury."

■ In the instant case, appellant has failed to demonstrate that he did not receive a fair trial. During voir dire each juror indicated that he was capable of rendering a decision totally upon the merits. Appellant has failed to demonstrate otherwise, therefore this assignment of error is without merit.

Next, appellant asserts that the trial court committed reversible error when it failed to sequester the jury during the trial. The trial court did sequester the jury when the case was submitted to the jury for decision. Title 22 O.S.1981, § 853 provides in part, "The jurors sworn to try an indictment or information, may, at any time,

before the submission of the cause to the jury, in the discretion of the court, be permitted to separate, or to be kept in charge of proper officers."

▮ In *Carson v. State*, 529 P.2d 499, 503 (Okl.Cr.1974), this Court stated, "Whether or not to invoke the rule of sequestration at all is a matter in the discretion of the trial court and not an absolute right of the defendant." The appellant has the burden of showing actual prejudice as a result of the trial court's determination as to whether or not the jury should be sequestered. In *Bird v. State*, 657 P.2d 183, 185 (Okl.Cr.1983), this Court stated in part, "The established rule is that before final submission of a case to a jury the burden of proof is on the defendant to show prejudice by separation of a juror or by any action subjecting the juror to outside influence." In *Bird* the court called one juror into his chambers after a recess was called. In that case it was asserted that reversible error occurred when the juror was allowed to be separated from proper officers. See *Tomlinson v. State*, 554 P.2d 798 (Okl.Cr. 1976) for a full recitation of the argument that press coverage of a trial may have prejudiced the jury and violated the sanctity of the jury. The record is clear. The trial court sequestered the jury after they were instructed and prior to the case being submitted to the jury for decision. Therefore, this assignment of error is without merit.

▮ In his next assignment of error, appellant contends that the State did not provide sufficient evidence at the preliminary hearing to bind him over for trial for first degree murder. However, a preliminary hearing is to determine whether or not an offense is committed and whether or not there was probable cause to believe that the accused may have committed that offense. In *Holloway v. State*, 602 P.2d 218, 219–20 (Okl.Cr.1979), this Court stated, "It is well established that a preliminary hearing is not a trial to determine the guilt of the accused, but only the two issues: was a crime committed, and is there reasonable

cause to believe the defendant committed said crime."

▮ The State is not required at a preliminary hearing to present evidence that would be sufficient to convict the accused at trial. There is always a presumption that the State will strengthen its evidence at trial by production of everything favorable to support the charge. In addition to the circumstantial evidence provided at the preliminary hearing, at trial the appellant took the stand and testified that he alone had killed the decedent. During the trial appellant set up his defense as being self-defense. Notwithstanding that the evidence presented at the preliminary hearing was not as strong as the evidence presented at trial, it was sufficient to show that there was probable cause to believe appellant had been involved in the murder.

▮ Appellant next asserts that he was denied effective assistance of counsel because his attorney had a conflict of interest. Defense counsel in this case represented all six of the persons accused in this murder. However, multiple representation without a showing of a conflict of interest is not in itself a violation of the Sixth Amendment. *Holloway v. Arkansas*, 435 U.S. 475, 482, 98 S.Ct. 1173, 1177, 55 L.Ed.2d 426 (1978); *Ross v. Heyne*, 638 F.2d 979, 982 (7th Cir.1980). The general rule is that a defendant who objects to multiple representation must have an opportunity to show that potential conflict imperils his right to a fair trial. However, in the instant case, appellant never objected to the representation. If no objection is interposed, a different standard is applied. In *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the United States Supreme Court held in order to establish a violation of the Sixth Amendment, "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyers performance ... but until the defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance."

The United States Supreme Court further held in *Cuyler*, "We hold that the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of a Sixth Amendment right, a defendant must establish that an actual conflict of interest adversely affected his lawyers performance."

■ The United States Supreme Court held in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), "The benchmark for judging any claim for ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. The same principle applies to a capital sentencing proceeding." *Strickland* goes further to say that the defendant must show first that counsel was not functioning as a "counsel" guaranteed the defendant by the Sixth Amendment, and second, that the deficient performance prejudiced the defense. Unless the defendant can make both showings it cannot be said that the conviction resulted from a breakdown in the adversary process. After reviewing the record before this Court we find that counsel was not ineffective in the representation of appellant. This is true notwithstanding the fact that counsel allowed himself to become embroiled in the factual situation and testified during the trial. The most crucial aspect of appellant's case was that he argued that he shot the decedent in self-defense. Consequently, defense counsel's performance was not adversely affected by a conflict of interest.

■ Appellant claims in his next assignment of error that he was denied a fair trial because of improper comments by the prosecutor. This Court set forth in *Frazier v. State*, 607 P.2d 709, 711 (Okl.Cr.1980) the following:

> The right of argument contemplates a liberal freedom of speech and the range of discussion, illustration and argumentation is wide. Counsel for both the State and the appellant have a right to discuss fully from their standpoints the evidence and the inferences and the deductions arising therefrom. Only when argument by counsel for the State is grossly improper and unwarranted upon some point which may affect the appellant's rights can a reversal for improper argument be justified.

The record reflects the defense counsel objected to one statement offered by the prosecutor and failed to request that the jury be admonished. A review of the transcript of testimony indicates that of the nine comments now complained of only two were objected to at trial. An examination of the cases cited by appellant in his brief shows that before this Court will reverse for improper argument where there are no objections the entire argument taken as a whole must have affected the fundamental fairness and impartiality of the trial. In the instant case, the prosecutor predicated his remarks primarily on what he believed the evidence showed. A conviction should not be reversed for alleged misconduct unless there was actual misconduct and such misconduct influenced the verdict against the defendant. *See Caffey v. State*, 661 P.2d 897 (Okl.Cr.1983). As we read the transcript of trial proceedings appellant's contentions that the jury was influenced by comments by the prosecutor is inaccurate. The verdict of guilty reached by the jury is substantiated by the State's evidence and the punishment imposed by the jury is within the range provided for by the statute. It should also be noted that the trial court instructed this jury on murder in the first degree as well as manslaughter in the first degree. This record reflects that the jury reached its verdict on the evidence and not because of any argument made by the prosecutor.

■ Appellant next contends that the trial court erred when it refused to grant a severance. The decision whether to grant a severance is within the discretion of the trial court and ordinarily that decision will not be reversed in the absence of a strong showing of prejudice. A severance is not a right on the matter of a defendant, but instead rests entirely on the judgment of the trial court. *See Faubion*

*v. State,* 569 P.2d 1022 (Okl.Cr.1977). Consequently, since the granting of a severance is a matter of discretion with the trial court, an abuse of that discretion must be demonstrated. In the instant case appellant has failed to show any such abuse on the part of the trial court.

■ In his last assignment of error, the appellant contends that there was insufficient evidence to sustain his conviction. The record before this Court clearly reflects that there was sufficient competent evidence from which the jury might conclude that appellant was guilty of the charge he confronted. *Spuehler v. State,* 709 P.2d 202 (Okl.Cr.1985).

It is not the function of this Court to again weigh the evidence which was considered by the jury when considering the case. The exclusive province of the jury is to weigh the evidence and to determine the facts. The scope of review on appeal from a conviction is limited to a determination of whether there is substantial evidence to support the verdict. In the instant case we find that the evidence was sufficient to support the verdict reached by the jury. It is clear by the record that appellant himself, while testifying, corroborated most of the State's case. The judgment and sentence in Beckham County District Court, Case No. CRF–78–41 is therefore AFFIRMED.

PARKS, P.J., and BUSSEY, J., concur.