**Donald Kent HONEYCUTT, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–85–590.**

Court of Criminal Appeals of Oklahoma.

April 13, 1988.

Lisbeth McCarty, Asst. Appellant Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., William H. Luker, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

The appellant, Donald Kent Honeycutt, was tried by jury and convicted of Kidnapping (Count I) (21 O.S.1981, § 741), two counts of First Degree Rape (Counts II and III) (21 O.S.Supp.1983, § 1114), and Sodomy (Count IV) (21 O.S.1981, § 886), After Former Conviction of a Felony (21 O.S. 1981, § 51(A)), in Noble County District Court, Case No. CRF–85–6, before the Honorable Lowell Doggett. The jury set punishment during the second stage at twenty (20) years for Count I, thirty (30) years for Count II, ten (10) years for Count III, and ten (10) years for Count IV, to be served consecutively. Judgment and sentence was imposed accordingly. From this, appellant has perfected this appeal. We affirm.

On the evening of March 23, 1984, appellant, Kirk McBrain and Mark Lovell were cruising downtown Ponca City. All three had consumed a large quantity of alcohol. They drove down Grand Avenue and spotted a young girl, R.A. With McBrain driving and appellant in the passenger seat, appellant yelled at the girl, who acknowledged them but continued walking on the sidewalk. McBrain pulled over to the curb and appellant got out of the car, picked up R.A., and carried her to the car. He placed her in the front seat between himself and McBrain. She was kicking and screaming during this sequence of events. Appellant slapped her and told her to quit screaming. All three men told her they would bring her back when they were "finished" with her.

McBrain drove to an isolated area at Lake Ponca and parked. The men then took turns sexually assaulting R.A. Appellant pushed R.A. into the back seat, where he forced her to have sexual intercourse with him while McBrain and Lovell sat in

the front seat. Lovell then got into the back seat and forced R.A. to have sexual intercourse with him. Lastly, McBrain got into the back seat, forcing R.A. to orally sodomize him.

Appellant started driving back into Ponca City while McBrain continued to force R.A. to sodomize him. Appellant stopped at a convenience store, and when finished at the store, the group headed back towards the lake, with appellant driving. Due to erratic driving, they were stopped by Officer Mike Shallop. He observed the smell of alcohol and uncoordinated actions of appellant and placed him under arrest. Then he asked the other two men for identification and noticed that neither man was wearing pants. After phoning for backup, he spoke with R.A. who told him of the recent events at the lake. R.A.'s face was red and swollen and she had car grease in her hair and on her clothes. R.A. was taken to the police station and then to the hospital.

Before trial, Lovell pled guilty to kidnapping and rape, and agreed to testify on behalf of the State. Preliminary hearings for appellant and McBrain were set for May 17, 1984. Appellant jumped bond and failed to appear, so the hearing was continued to July 26, 1984. On July 26, 1984, a preliminary hearing was held for McBrain but appellant had not yet been returned to custody. At this hearing, R.A. testified for the State, describing the events of March 23, 1984, and the involvement of each man in these events. On November, 13, 1984, appellant was returned to custody. However, before his preliminary hearing, R.A. was killed. McBrain was later convicted of her murder.

During appellant's trial, the transcript of R.A.'s testimony at McBrain's preliminary hearing was read to the jury. As his first assignment of error, appellant urges that the admission of this transcript was error. His argument is twofold: (1) the admission of the transcript violated his constitutional right of confrontation and (2) the admission of the transcript was error as it did not fall within any recognized hearsay exception.

While these two arguments necessarily overlap, we will address them separately.

Focusing first on the appellant's constitutional right to confront witnesses, we believe that he waived this right by his conduct. Clearly, a defendant may waive his right to confrontation if, by his actions, he voluntarily absents himself from the proceedings. *See Henderson v. State*, 661 P.2d 68, 70 (Okla.Crim.App.1983). To constitute a valid waiver, the defendant must have intentionally relinquished his right to confront witnesses. *See United States v. Carlson*, 547 F.2d 1346, 1358 (8th Cir.1976), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977). In the present case, appellant had notice that his preliminary hearing was to be held on May 17, 1984. His counsel was present on this date, ready to represent appellant during the proceeding. Only after it became apparent that appellant had jumped bond did his attorney withdraw.

Appellant urges that he did not waive his right to cross examine R.A., but instead wished to conduct an examination of R.A. at a later date. Even so, appellant took the risk that she would not be available to testify at a later time. *See Disheroon v. State*, 518 P.2d 892, 894 (Okla.Crim.App. 1974), *cert. denied*, 419 U.S. 881, 95 S.Ct. 146, 42 L.Ed.2d 121 (1974). Any contrary holding by this Court would allow the appellant to take advantage of his own wrongdoing by prohibiting the State from introducing a transcript of a proceeding where the appellant intentionally failed to appear.

> The Sixth Amendment does not stand as a shield to protect the accused from his own misconduct or chicanery ... [The defendant] cannot now be heard to complain that he was denied the right to cross-examination and confrontation when he himself was the instrument of the denial ... Neither in criminal nor in civil cases will the law allow a person to take advantage of his own wrong.

*United States v. Carlson, supra*, at 1359. Accordingly, appellant waived his right to confront R.A. by failing to appear at his

preliminary hearing. *See Sonnier v. State,* 597 P.2d 771, 773 (Okla.Crim.App.1979).

Secondly, appellant contends that the transcript was hearsay which was not admissible under 12 O.S.1981, § 2804(B)(1). Under 12 O.S.1981, § 2804(A), a witness must be unavailable before his out-of-court statements will be admitted. R.A. was murdered before the appellant was returned to custody and was obviously unavailable to testify at appellant's preliminary hearing or trial.

If a witness is unavailable, Section 2804(B)(1) allows the witness' prior testimony to be admitted if the defendant had an opportunity and a similar motive to develop testimony by direct, cross, or redirect examination. *Rogers v. State,* 721 P.2d 820, 823 (Okla.Crim.App.1986). The exception does not require the appellant to have actually conducted a cross-examination; instead, it only requires that he be given an opportunity to question the witness. *See* 12 O.S.1981, § 2804(B)(1); *cf. Disheroon v. State, supra,* at 894. By requiring an opportunity to cross-examine, 12 O.S.1981, § 2804 affords protection to the appellant's contitutional right to confront witnesses.

On May 17, 1984, appellant had opportunity to conduct, through his counsel, a cross-examination of R.A. R.A. was present and able to testify. However, appellant chose to forego his opportunity to confront R.A. by failing to appear at his preliminary hearing. As we stated above, appellant waived his right of confrontation. He cannot now rely on his own misconduct to prevent the introduction of her testimony at trial. *See United States v. Carlson, supra,* at 1359.

Appellant also asserts that he and McBrain did not have a similar motive during the cross-examination of R.A. We must disagree. Neither appellant nor McBrain argued that they did not commit the assaults upon R.A. Instead, both seemed to rely on the defense of consent inasmuch as they were seeking to show that R.A. agreed to the sexual activity.

This Court has never defined the word "motive" as used in Section 2804(B)(1). However, we believe that this word should be used in its ordinary sense. That is, "motive" is the moving power which prompts a person to act in a certain way. Black's Law Dictionary 914 (5th Ed.1979). *See also State v. Massengill,* 657 P.2d 139 (N.M.App.1983). In the present case, appellant's motive was similar to that of McBrain. Neither man denied that sexual activity had occurred; rather, both argued that R.A. consented to the activity. Clearly, they had a similar motive in cross-examining R.A.

Because the transcript of R.A.'s testimony meets all the requirements set out under Sections 2804(A) and 2804(B)(1), it was admissible at appellant's trial. This proposition is without merit.

Appellant's second and fourth assignments of error urge that he was denied effective assistance of counsel. In his second proposition, he claims that a conflict of interest precluded his attorney from acting on appellant's behalf, thereby causing him severe prejudice. Attorney Ghostbear was initially appointed to represent all three defendants. However, Ghostbear withdrew as counsel for appellant after appellant failed to appear at his scheduled preliminary hearing. Thereafter, appellant was appointed a different attorney. At trial, no objection based on conflict of interest was made by appellant.

*Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980), articulated the standard for determining a conflict of interest claim when the defendant failed to interpose an objection at trial. The defendant who failed to object at trial is required to demonstrate an actual conflict of interest which adversely affected his attorney's performance. *Id.* 100 S.Ct. at 1718; *Matricia v. State,* 726 P.2d 900, 903 (Okla.Crim.App.1986).

As this Court stated in *Matricia,* the defendant has not met his burden until he shows that his attorney actively represented conflicting interests and that he suffered actual prejudice. Appellant, in seeking to meet this burden, points to the preliminary hearing transcript, claiming that Ghostbear was possibly privy to confiden-

tial information concerning appellant. He also argues that Ghostbear sought to shift the blame to appellant. This assertion must fail because "the possibility of conflict is insufficient to impugn a criminal conviction." *Matricia* at 904, citing *Cuyler v. Sullivan, supra.* Also, the record does not support the allegation that Ghostbear attempted to shift the blame to appellant. As stated previously, Ghostbear did not make appellant appear more culpable than McBrain, but instead sought to show consent by R.A.

Appellant's second basis for asserting that he was denied effective assistance of counsel centers around the following comment made by the defense counsel during the second stage of trial:

> DEFENSE ATTORNEY: I want you to view this gentleman in what's fair and what will allow him to eventually get back and lead a normal life and be a productive citizen in our society.

Appellant argues that this is an unmistakable reference to pardon and parole. He asserts that because like conduct on the part of the prosecutor would warrant modification, this comment indicates defense counsel's ineffectiveness. We do not find it necessary to address this novel argument as the comment was not an unmistakable reference to pardon and parole. *See Richardson v. State,* 600 P.2d 361, 367 (Okla. Crim.App.1979). Defense counsel was seeking to obtain a lesser punishment for appellant, which is his duty as an advocate. Appellant's assertion is completely without merit.

As his next proposition, appellant suggests that the trial court erred by admitting evidence regarding his escape from custody without giving a limiting instruction. Appellant insists that the instruction given at trial regarding escape forced the jury to find "consciousness of guilt." The instruction reads as follows:

> Evidence has been received that the defendant, Donald Kent Honeycutt, has allegedly committed offenses of Escape and Bail Jumping. You may consider this evidence as tending to show consciousness of guilt.

It is clear that evidence of escape and bail jumping is admissible to show guilt. *Rushing v. State,* 676 P.2d 842, 850 (Okla.Crim. App.1984). As such, it was not error to admit this evidence. Further, appellant failed to object to the instruction or to submit additional instructions. Therefore, all but fundamental error is waived. *Jetton v. State,* 632 P.2d 432, 434 (Okla.Crim. App.1981). The instruction given allowed the jury to consider this evidence, but did not force the jury to accept as conclusive his consciousness of guilt. The instruction was correct. Accordingly, this assignment of error is without merit.

As his final assignment of error, appellant urges that an accumulation of errors requires reversal. Having reviewed all of his propositions and finding no error, this assignment is also without merit. *Hawkes v. State,* 644 P.2d 111, 113 (Okla.Crim.App. 1982).

Accordingly, the judgment and sentences are AFFIRMED.

BRETT, P.J., and BUSSEY, J., concur.