David Wayne WOODRUFF, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-87-132.

Court of Criminal Appeals of Oklahoma.

Feb. 12, 1992.

David Autry, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., Sandra D. Howard, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

David Wayne Woodruff, appellant, was convicted in Oklahoma County District Court Case No. CRF-86-3920 of Murder in the First Degree. Punishment was fixed at death according to the jury's recommendation.

Appellant was tried with his codefendant John Joseph Romano. They were accused of murdering and robbing Romano's friend, Lloyd Thompson, on July 19, 1986. Romano had previously worked for the decedent by setting up gambling parties for Thompson who gambled on a regular basis.

Ollie Irvin saw Thompson and a young man in the parking lot of the apartment complex where she and Thompson resided on July 19, 1986. She watched through her doorway as the young man changed a tire on Thompson's automobile. The man then

followed Thompson to his upstairs apartment. Within a few minutes she heard very loud music from Thompson's apartment which was directly above her. She also heard loud banging and thumping noises which lasted several minutes.

Shortly thereafter, another neighbor who lived next door to Thompson, Daniel Powell, came to Irvin's door to ask if she knew why loud music was coming from Thompson's apartment. They tried to telephone Thompson from Irvin's apartment but received a busy signal. Powell then telephoned the police who forced open the door to Thompson's apartment and found that he had been brutally murdered.

Thompson had been stabbed and sliced with a knife some thirty times. He was stabbed twice in the heart and once in the spinal column, any one of which would have been fatal. Thompson was found without jewelry or cash, though he was known to carry large amounts of cash and wore a watch.

Daniel Powell testified at trial that he arrived home from doing laundry at approximately 11:30 a.m. on July 19, 1986. He saw a brown Mercury Cougar backed into a parking space at the apartment complex where he, Thompson, and Irvin lived. One man was seated in the automobile and another, whom he identified as Romano, was coming down the stairs of the complex carrying a grocery sack. He saw this man get into the Cougar and leave hastily. He noted the license plate number of the automobile because he was suspicious of the men.

The police discovered that the automobile driven by the men was registered in the name of Romano's girlfriend, Tracy Burnett. During the evening of July 19, 1986, Romano was arrested in Clovis, New Mexico, where he had driven in the same vehicle.

Appellant testified at trial and said that he in fact had been at Thompson's apartment the morning he was killed, but that Romano and Thompson had gotten into an argument and struck at each other with knives. He said that Thompson had fallen against him and that is why the clothes

appellant had worn were saturated with blood. Romano also testified that he and appellant had gone to Thompson's apartment on the morning of July 19, 1986, to rob him. He had punctured one of the tires on Thompson's vehicle knowing that Thompson would be unable to change the tire because of a heart condition. This was done to prevent Thompson from leaving before Romano and appellant had a chance to rob him. In the meantime, Romano testified, he had told appellant he would not rob Thompson. Romano subsequently told Thompson that he had a flat tire and changed it for him. He went to the restroom at Thompson's apartment to clean up after changing the tire and when he came out, he saw appellant attacking Thompson with a knife. Romano refused to participate in the assault and did not know of any money or jewelry being stolen.

On appeal, appellant contends *inter alia* that the trial court erred in denying his and Romano's requests for severance of trial. Counsel for each defendant indicated prior to trial that their client would admit being at Thompson's apartment, but blame the other for the crimes. The prosecutor said that he would not introduce into evidence any statement by either defendant which implicated the other. At the hearing on the motion for severance, Romano's lawyer indicated that Romano would testify that appellant had stabbed the victim. Appellant's attorney said that appellant would testify Romano had stabbed the decedent.

■ The granting of severance is not a matter of right for a criminal defendant, but is a matter within the trial court's discretion. *Faubion v. State*, 569 P.2d 1022 (Okl.Cr.1977). Therefore, this Court in reviewing a trial court's denial of severance must do so to determine if there was an abuse of that discretion. *Matricia v. State*, 726 P.2d 900 (Okl.Cr.1986); *Cooper v. State*, 584 P.2d 234 (Okl.Cr.1978).

■ Severance of trial is for the purpose of preventing prejudice which would deny a defendant a fair trial. *United States v. Calabrese*, 645 F.2d 1379 (10th Cir.1981), *cert. denied*, 451 U.S. 1018, 101 S.Ct. 3008,

69 L.Ed.2d 390. A trial judge must balance the inefficiency of separate trials against the prejudice the defendant asserts he will incur. The defendant has the burden of presenting evidence to show he will be prejudiced by the joinder. *Hightower v. State*, 672 P.2d 671 (Okl.Cr.1983).

■ This Court has previously held that when the defenses of codefendants are mutually antagonistic, pitting the defendants against one another, the trial court abuses its discretion in denying severance. *Murray v. State*, 528 P.2d 739 (Okl.Cr.1974). When defenses of codefendants are antagonistic to the degree of being mutually exclusive or irreconcilable, severance is warranted to insure that each will receive a fair trial. "Defenses are antagonistic where each defendant is trying to exculpate himself and inculpate his codefendant." *VanWoundenberg v. State*, 720 P.2d 328, 331 (Okl.Cr.1986), *cert. denied* 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (citation omitted).

■ The defenses of appellant and Romano are irreconcilable. Appellant testified that he and Romano went to Thompson's apartment to get appellant a job dealing blackjack. An argument ensued between Thompson and Romano, and Romano acting alone killed Thompson. Romano's version is entirely different. He claimed to have originally gone to Thompson's apartment with appellant for the purpose of robbing Thompson. Appellant attacked and killed Thompson after Romano had withdrawn from the scheme and thought the plan had been abandoned.

After carefully reviewing the record before the trial judge at the pretrial hearing when he was asked to decide the issue of severance, we cannot say that he abused his discretion in denying the motion. The attorneys for the codefendants at the hearing on the motion spoke only in terms of their defendant accusing the other of stabbing Thompson. Appellant's attorney told the trial judge that "my client will testify that [Romano] did the stabbing, that my client was not an active participant in this particular case...." The prosecutor argued that this case was similar to those previously decided by this Court as not requiring severance. He cited *Master v. State*, 702 P.2d 375 (Okl.Cr.1985), and *Cooks v. State*, 699 P.2d 653 (Okl.Cr.1985), which are cases of codefendants who acted in concert in the crimes of robbery, rape, and murder. The defenses of the confederates were held not to be truly inconsistent when the only variation of each defendant's version of the events was who had tied the death producing gag around the victim's head.

However, the true nature of the defenses of appellant and Romano did become apparent during their trial. At that time, the trial court should have ordered a mistrial due to the exigent circumstances and because of the prejudice each defendant would endure by being jointly tried. Each was required to defend against the other's testimony exculpating self and inculpating codefendant. The defendants were also required to share peremptory challenges, which is another form of prejudice we have found significant in determining the need for severance. *Murray v. State*, 528 P.2d 739 (Okl.Cr.1974). Appellant was denied the fairness of trial which severance would have provided. Therefore, this case must be REVERSED and REMANDED for a NEW TRIAL.

Judicial economy is an important goal achieved by trying related offenses and defendants together. *Cooks*, 699 P.2d at 658. However, this goal is not well served if the need for severance is not disclosed until after trial has begun. We cannot help but believe that more should have been done in this case to apprise the trial judge of the need for severance. While a defendant may be reluctant to reveal the details of his defense, he must provide the trial judge with sufficient information to determine that his and codefendant's defenses are in fact mutually antagonistic. The trial courts as well need to be careful that they have enough information to make a considered decision.

Aside from being required to defend against each other's accusations, appellant and Romano were allowed a total of only nine peremptory challenges. On a coin

flip, appellant got five and Romano got four. Each contends that there were prospective jurors they would have excused if allowed more. Indeed, when the defenses of codefendants are inconsistent, they should not be required to share peremptory challenges. 22 O.S.1981, § 655. This statute provides:

> In all criminal cases the prosecution and the defendant are each entitled to the following peremptory challenges: Provided, that if two or more defendants are tried jointly they shall join in their challenges; provided, that when two or more defendants have inconsistent defenses they shall be granted separate challenges for each defendant as hereinafter set forth.
>
> First. In prosecutions for first degree murder, nine jurors each.

While it is true that peremptory challenges are created by statute and governed by state law, "the 'right' to peremptory challenges is 'denied or impaired' only if the defendant does not receive that which state law provides." *Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). Having found that the defendants' defenses were inconsistent, we find that the trial court improperly denied their right to nine peremptory challenges each as provided by statute. Indeed, had severance of trial been granted, this prejudice would not have been incurred.

On the basis of the foregoing, the Judgment and Sentence is REVERSED and REMANDED with instructions to sever for NEW TRIAL.

LANE, P.J., and BRETT, J., concur.

LUMPKIN, V.P.J., concurs in result.

JOHNSON, J., specially concurs.

JOHNSON, Judge, specially concurs.

While I agree wholeheartedly with the opinion of the learned Judge Parks and agree that this case must be reversed and remanded, I feel a duty to speak to the bench and the bar about the problem involved.

Judicial economy is not an excuse for the violation of a defendant's rights of due process under the Okla. Const. art. 2, § 7, nor a violation of the Constitution of the United States and the due process clause contained in the Fourteenth Amendment.

From the transcripts, it appears that the motion for severance came on at a motion docket along with numerous other criminal matters. At this particular point in time, the court is correct in that the statements and facts presented to the trial court were not enough to warrant a severance. One of the attorneys involved did not even file a motion for a severance. It is the duty of the defense attorneys to adequately notify the court of antagonistic defenses and file the proper motions requesting severance. It is also the duty of the bench when the trial judge has reason to believe that such defenses may arise to ask the proper questions and to make sure that the record is adequate to show the need for a severance. In this particular case, neither of these were accomplished by either the bench or the bar. In the event that the defendant's attorneys do not want to divulge defenses or trial strategy, they certainly could have asked for an ex parte in-camera hearing which the court could have granted solely for that purpose, that is, to determine the necessity for a severance. The court has the power to communicate separately with each defense attorney so that the court would be prepared to make a proper decision. Obviously, these hearings should be on the record and not in chambers without a record.

Presiding Judge Lane has so eloquently stated at a hearing, "it certainly is not judicial economy to try a case three times when it could have been tried twice, thereby saving the State, witnesses and even this Court the problems of a reversal."