John Joseph ROMANO, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–87–133.

Court of Criminal Appeals of Oklahoma.

Feb. 28, 1992.

As Corrected March 5 and 19, 1992.

Rehearing Denied April 22, 1992.

Cindy Foley, Asst. Public Defender, Lee Ann Jones Peters, Asst. Public Defender, Chief of Appellate Div., Oklahoma City, for appellant.

William C. Devinney, Oklahoma City, for appellant.

Robert H. Henry, Atty. Gen., M. Caroline Emerson, Sandra D. Howard, Asst. Attys. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

John Joseph Romano, appellant, was convicted of Murder in the First Degree in Oklahoma County District Court Case No. CRF–86–3920. Punishment was fixed at death, in accordance with the jury's recommendation.

Appellant was tried with his codefendant David Wayne Woodruff. They were accused of murdering and robbing appellant's friend, Lloyd Thompson, on July 19, 1986. The facts of this case are set forth in our opinion in *Woodruff v. State*, 825 P.2d 273 (Okl.Cr.1992).

Appellant contends that the trial court erred in denying his request for a severance of trial from his codefendant. Appellant's counsel presented a motion for severance on the district court's regular motion docket a few days before trial. The transcript from the hearing conducted on that motion indicates that Woodruff's attorney, who had joined in appellant's motion, told the district judge that "my client will testify that [Romano] did the stabbing, that my client was not an active participant in this particular case...."

 This Court held in *Murray v. State*, 528 P.2d 739 (Okl.Cr.1974), that

when defenses of codefendants are mutually antagonistic, pitting the defendants against one another, the trial court abuses its discretion in denying severance. When defenses of codefendants are antagonistic to the degree of being mutually exclusive or irreconcilable, severance is warranted to insure that each will receive a fair trial. "Defenses are antagonistic where each defendant is trying to exculpate himself and inculpate his codefendant." *Van Woundenberg v. State*, 720 P.2d 328, 331 (Okl.Cr. 1986), *cert. denied* 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (citation omitted). However, the granting of severance is not a matter of right for a criminal defendant. It is a matter within the trial court's discretion. *Faubion v. State*, 569 P.2d 1022 (Okl.Cr.1977). Accordingly, review by this Court of a trial court's decision is to determine whether there was an abuse of that discretion. *Matricia v. State*, 726 P.2d 900 (Okl.Cr.1986); *Cooper v. State*, 584 P.2d 234 (Okl.Cr.1978).

■ We cannot say that the trial court abused its discretion in denying codefendants' request for severance of trial. There was scant indication that their defenses were in fact antagonistic. The prosecutor argued that this case was similar to those previously decided by this Court as not requiring severance. He cited *Master v. State*, 702 P.2d 375 (Okl.Cr.1985), and *Cooks v. State*, 699 P.2d 653 (Okl.Cr.1985), which are cases of codefendants who acted in concert in the crimes of robbery, rape, and murder. The defenses of the confederates were held not to be truly antagonistic when the only significant variation in each defendant's version of the events was who had tied the death producing gag around the victim's head. Codefendants herein did not demonstrate to the trial court how their case was different than those cases.

The defendant has the burden of presenting evidence to show he will be prejudiced by the joinder. *Hightower v. State*, 672 P.2d 671 (Okl.Cr.1983). The codefendants herein did not carry their burden. Yet, the

purpose of severance being to prevent prejudice which would deny a fair trial, *United States v. Calabrese*, 645 F.2d 1379 (10th Cir.1981), *cert. denied* 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390, the burden continued throughout trial to guarantee a fair one. When it became apparent to the trial judge that the defenses of Romano and Woodruff were mutually antagonistic, a mistrial should have been declared.

We noted in our decision in *Woodruff* that:

> The defenses of appellant and Romano are irreconcilable. Appellant testified that he and Romano went to Thompson's apartment to get appellant a job dealing blackjack. An argument ensued between Thompson and Romano, and Romano acting alone killed Thompson. Romano's version is entirely different. He claimed to have originally gone to Thompson's apartment with appellant for the purpose of robbing Thompson. Appellant attacked and killed Thompson after Romano had withdrawn from the scheme and thought the plan had been abandoned.

*Woodruff*, 825 P.2d at 275.

Judicial economy is an important goal furthered by joint trial of codefendants. *Cooks*, 699 P.2d at 658. But as important as it is, it does not outweigh a defendant's right to a fair trial and due process of law. The defense attorney has the duty to adequately notify the trial court of antagonistic defenses and to present proper motions requesting severance. The trial court has the duty to inform itself when antagonistic defenses are indicated. It must insure that it is armed with a record complete enough to discern whether defenses are mutually antagonistic.

■ Because of the foregoing, we hold that the proper procedure to be followed when defenses are purportedly antagonistic is: *First*, defense counsel should notify the trial court with such a written motion and oral argument as will inform the court of the need for severance of trial.

A defense attorney should act with sufficient dispatch so that the trial docket of the court is not disrupted by the possible severance. Defense counsel must disclose to the court enough information that will demonstrate that defendants will be prejudiced by joinder in trial. Although a record should be made of the motion and proceedings thereon, a defendant not wishing to disclose his defense or trial strategy could conduct a recorded ex parte in-camera hearing with the trial judge to inform the court on that limited matter. *Second,* the trial judge should acquire sufficient information on the nature of the defendants' defenses to make an informed decision on the record. *Third,* the trial court should grant a mistrial whenever it appears that codefendants will be prejudiced by mutually antagonistic defenses and denied a fair trial by joinder, unless waiver is indicated.

We also held in *Woodruff* that the codefendants had been improperly denied the statutory complement of nine peremptory challenges each since they had inconsistent defenses. We stated therein:

> While it is true that peremptory challenges are created by statute and governed by state law, "the 'right' to peremptory is 'denied or impaired' only if the defendant does not receive that which state law provides." *Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). Having found that the defendants' defenses were inconsistent, we find that the trial court improperly denied their right to nine peremptory challenges each as provided by statute. Indeed, had severance of trial been granted, this prejudice would not have been incurred.

*Woodruff,* 825 P.2d at 276.

The Judgment and Sentence is REVERSED and the case REMANDED with directions to sever for NEW TRIAL.

LANE, P.J., and BRETT and JOHNSON, JJ., concur.

LUMPKIN, V.P.J., concurs in part/dissents in part.

LUMPKIN, Vice–Presiding Judge: concur in part/dissent in part

I concur in the results reached by the Court in this case, however, I must dissent to the Court's attempt to create a trial procedure which disregards the Code òf Judicial Conduct and the rights of parties to a lawsuit.

The Court seeks to create a rule which would preclude the problems which developed at trial in this case. However, the proposal neither creates incentive for compliance, nor enforcement if there is failure to comply. In addition, the Court disregards the provisions of the Code of Judicial Conduct, 5 O.S. 1981, Ch. 1, App. 4, and the tenuous ethical position in which the trial judge would be placed by the suggested procedure. Canon 3.A (4) states:

> A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding. A judge, however, may obtain the advice of a disinterested expert on the law applicable to a proceeding before him if he gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond. (emphasis added)

In addition, Canon 2 provides that a judge should avoid impropriety and the appearance of impropriety in all his activities. This proposed ex parte procedure will create the appearance of impropriety in the eyes of the average citizen due to the secretive nature of the hearing.

Often problems of joinder are subject to being reconciled through the formulation of trial procedure, redacting of statements, and other trial management tools. Ex parte proceedings create an ethical quagmire for the trial judge and should be abhorred, not promoted, by this Court. If an ex parte hearing is conducted, how does

the trial judge then determine if any conflicts can be resolved? As we have seen, too often defense counsel incorrectly view "inconsistent" defenses as "mutually antagonistic" defenses. This problem is compounded by the Court's incorrect statement in the proposed procedure which states that defense counsel must only show to the trial judge "that defendants will be prejudiced by joinder at trial". That is not the standard for determining if mutually antagonistic defenses exist. The trial court must be afforded the ability to determine the true nature of the defense without being placed in the untenable position of being both inquisitor and judge. This does not mean the defense must disclose trial strategy, but disclosure must be made of sufficient evidence which will be presented at trial to allow the trial judge to determine if the defense is a "mutually antagonistic defense" which precludes a joint trial. The adversarial process ensures these issues are addressed openly by the parties who are familiar with their case and the trial judge maintains the appropriate judicial position of objective, unbiased adjudicator of the legal issues presented. The procedure suggested by the Court further clouds the issue and does not provide a definitive, enforceable procedure which will work to alleviate the type of situation which occurred in this case. I must therefore dissent to its adoption.